## SCHEFFER v. RAILROAD COMPANY.

By reason of a collision of railway trains in Virginia a passenger was injured, and becoming thereby disordered in mind and body he some eight months thereafter committed suicide. *Held*, in a suit by his personal representatives against the railway company, that as his own act was the proximate cause of his death, they are not entitled to recover.

ERROR to the Circuit Court of the United States for the Eastern District of Virginia.

The facts are stated in the opinion of the court.

*Mr. George A. King*, with whom were *Mr. Charles King* and *Mr. John B. Sanborn*, for the plaintiffs in error.

*Mr. Linden Kent, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

The plaintiffs, executors of Charles Scheffer, deceased, brought this action to recover of the Washington City, Virginia Midland, and Great Southern Railroad Company damages for his death, which they allege resulted from the negligence of the company while carrying him on its road. The defendant's demurrer to their declaration was sustained, and to reverse the judgment rendered thereon they sued out this writ of error.

The statute of Virginia, under which the action was brought, is, as to the question raised on the demurrer, identical with those of all the other States, giving the right of recovery when the death is caused by such default or neglect as would have entitled the party injured to recover damages if death had not ensued.

The declaration, after alleging the carelessness of the officers of the company, by which a collision occurred between the train on which Scheffer was and another train, on the seventh day of December, 1874, proceeds as follows : —

" Whereby said sleeping-car was rent, broken, torn, and shattered, and by means whereof the said Charles Scheffer was cut, bruised, maimed, and disfigured, wounded, lamed, and injured about his head, face, neck, back, and spine, and by reason whereof the said Charles Scheffer became and was sick, sore, lame, and disordered in mind and body, and in his brain and spine, and by means whereof phantasms, illusions, and forebodings of unendurable evils to come upon him, the said Charles Scheffer, were produced and caused upon the brain and mind of him, the said Charles Scheffer, which disease, so produced as aforesaid, baffled all medical skill, and continued constantly to disturb, harass, annoy, and prostrate the nervous system of him, the said Charles Scheffer, to wit, from the seventh day of December, A. D. 1874, to the eighth day of August, 1875, when said phantasms, illusions, and forebodings, produced as aforesaid, overcame and prostrated all his reasoning powers, and induced him, the said Charles Scheffer, to take his life in an effort to avoid said phantasms, illusions, and forebodings, which he then and there did, whereby and by means of the careless, unskilful, and negligent acts of the said defendant aforesaid, the said Charles Scheffer, to wit, on the eighth day of August, 1875, lost his life and died, leaving him surviving a wife and children."

The Circuit Court sustained the demurrer on the ground that the death of Scheffer was not due to the negligence of the company in the judicial sense which made it liable under the statute. That the relation of such negligence was too remote as a cause of the death to justify recovery, the proximate cause being the suicide of the decedent, — his death by his own immediate act.

In this opinion we concur.

Two cases are cited by counsel, decided in this court, on the subject of the remote and proximate causes of acts where the liability of the party sued depends on whether the act is held to be the one or the other ; and, though relied on by plain-

tiffs, we think they both sustain the judgment of the Circuit Court.

The first of these is *Insurance Company* v. *Tweed*, 7 Wall. 44.

In that case a policy of fire insurance contained the usual clause of exception from liability for any loss which might occur " by means of any invasion, insurrection, riot, or civil commotion, or any military or usurped power, explosion, earthquake, or hurricane."

An explosion took place in the Marshall warehouse, which threw down the walls of the Alabama warehouse, — the one insured, situated across the street from Marshall warehouse, — and by this means, and by the sparks from the Eagle Mill, also fired by the explosion, facilitated by the direction of the wind, the Alabama warehouse was burned. This court held that the explosion was the proximate cause of the loss of the Alabama warehouse, because the fire extended at once from the Marshall warehouse, where the explosion occurred. The court said that no new or intervening cause occurred between the explosion and the burning of the Alabama warehouse. That if a new force or power had intervened, sufficient of itself to stand as the cause of the misfortune, the other must be considered as too remote.

This case went to the verge of the sound doctrine in holding the explosion to be the proximate cause of the loss of the Alabama warehouse ; but it rested on the ground that no other proximate cause was found.

In *Milwaukee & St. Paul Railway Co.* v. *Kellogg* (94 U. S. 469), the sparks from a steam ferry-boat had, through the negligence of its owner, the defendant, set fire to an elevator. The sparks from the elevator had set fire to the plaintiff's saw-mill and lumber-yard, which were from three to four hundred feet from the elevator. The court was requested to charge the jury that the injury sustained by the plaintiff was too remote from the negligence to afford a ground for a recovery.

Instead of this, the court submitted to the jury to find " whether the burning of the mill and lumber was the result naturally and reasonably to be expected from the burning of the elevator ; whether it was a result which under the circum-

stances would not naturally follow from the burning of the elevator, and whether it was the result of the continued effect of the sparks from the steamboat, without the aid of other causes not reasonably to be expected."

This court affirmed the ruling, and in commenting on the difficulty of ascertaining, in each case, the line between the proximate and the remote causes of a wrong for which a remedy is sought, said : " It is admitted that the rule is difficult. But it is generally held that, in order to warrant a finding that negligence or an act not amounting to wanton wrong is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." To the same effect is the language of the court in *McDonald* v. *Snelling*, 14 Allen (Mass.), 290.

Bringing the case before us to the test of these principles, it presents no difficulty. The proximate cause of the death of Scheffer was his own act of self-destruction. It was within the rule in both these cases a new cause, and a sufficient cause of death.

The argument is not sound which seeks to trace this immediate cause of the death through the previous stages of mental aberration, physical suffering, and eight months' disease and medical treatment to the original accident on the railroad. Such a course of possible or even logical argument would lead back to that " great first cause least understood," in which the train of all causation ends.

The suicide of Scheffer was not a result naturally and reasonably to be expected from the injury received on the train. It was not the natural and probable consequence, and could not have been foreseen in the light of the circumstances attending the negligence of the officers in charge of the train.

His insanity, as a cause of his final destruction, was as little the natural or probable result of the negligence of the railway officials, as his suicide, and each of these are casual or unexpected causes, intervening between the act which injured him, and his death.

*Judgment affirmed.*