BODKIN, Jr., *v.* WESTERN UNION TEL. CO.

*(Circuit Court, D. Kentucky.  February 14, 1887.)*

NEGLIGENCE—PROXIMATE AND REMOTE CAUSE—TELEGRAPH COMPANIES.

Plaintiff's petition alleged the loss, by a flood, of certain barrel staves, ow- ing to the negligence of the defendant in not delivering a telegram, contain- ing information of the arrival of a barge upon which said staves were to have been shipped, until 30 hours after the receipt of said telegram, although he lived within a hundred yards of defendant's office. *Held,* overruling demur- rer to petition, that the plaintiff could recover damages for the loss of the use of the barge in its ordinary and usual uses, but that he could not recover for the loss of the staves which *might* have been saved by the use of the barge, as it did not appear that the negligence of the defendant was the natural and proximate cause of such loss.

At Law.  The opinion states the case.

*White & Reeves* and *J. M. Bigger,* for plaintiff.

*Henry Burnett,* for defendant.

BARR, J.  Plaintiff alleges that he made a contract with F. Norman, who did business in Mound City, Illinois, in which it was agreed he (Norman) would pay plaintiff $50 per thousand for all the staves he would get out and deliver to him at Mound City, Illinois.  In this agree- ment, Norman was to furnish vessels suitable for the purpose of shipping the staves from where they were made to Mound City; that he made, under the agreement, about 40,000 staves, and had them on or near the banks of Mayfield creek, which empties into the Mississippi river at or about 10 or 12 miles below Mound City.  Mayfield is a small creek, which only furnishes water enough to float barges, and other like vessels, when it is high, and hence it must be used for that purpose when the water is high.  He alleges that when he was ready with his staves on said creek, he notified Norman, and it was agreed between them that the staves would be shipped whenever the water was at a suitable stage, and that Norman was to send a barge to the mouth of Mayfield creek, and notify plaintiff, and plaintiff was to take it from there up the creek to the staves, and there load the barge, and deliver the staves to him at Mound City.  He says that when the water began to rise, and was ris- ing rapidly, Norman sent a barge to the mouth of Mayfield creek, and secured it at or near the bridge of the Mobile Railroad Company, which is just above the mouth of Mayfield creek, and that said Norman wrote and delivered to the defendant's agent at Mound City a telegram ad- dressed to plaintiff, at Bardwell, which was as follows:

"MOUND CITY, ILLS.

"*D. Bodkin, Jr., Bardwell:*  Barge at Mobile bridge.  Get them above as soon as possible.                                        F. NORMAN."

He alleges that defendant undertook to deliver this telegram within a reasonable time; that in fact it was promptly transmitted to Bardwell, but defendant failed to deliver it for 30 hours after its receipt at Bard- well, although plaintiff lived within a hundred yards of defendant's

office, and was actually in defendant's office within that time; that this failure was because of negligence and carelessness of defendant's agent; that plaintiff went, immediately upon the receipt of said telegram, to said barge, and found it in good order, and he, without delay, started up the creek with it, and did pass up under the Mobile bridge, and ascended up the creek until he got to the bridge of the Illinois Central Railroad Company, which is a short distance above the Mobile bridge. When he got there he found the water had risen so high that he was unable to get said barge above said bridge. He says that the water continued to rise, and did overflow the banks of said creek, and remained up four or five weeks, during all of which time he was unable to get said barge up to the staves. He says that about 20,000 of his said staves were carried off by high water, and were entirely lost, and that a large number of them were floated out into the bottom and were recovered by him at great expense and labor. He says that, if said telegram had been delivered to him within a reasonable time after it was received by the defendant at Bardwell, he could and would have passed the said barge under the said railroad bridge, and have gone to the staves, and loaded them upon said barge, long before the water got to such a height as to float them off, and he would have saved them all. and would have avoided the loss of them as aforesaid, and the delay, labor, and expense of recovering the others. He alleges that he was damaged in the sum of $2,000 because of the failure of defendant to deliver said telegram within a reasonable time.

The defendant has demurred to this petition, and insists that, upon the facts alleged, plaintiff is not entitled to recover any amount of damages.

Assuming that plaintiff has a right of action for a breach of *this contract*, if there be a breach, and damage, and this seems to be conceded by defendant's counsel, the question arises, has there been a breach, and was plaintiff damaged? Certainly, a delay of 30 hours in the delivery of a dispatch to a person who was within a few hundred yards of the telegraph office was a breach of the contract. It is, however, insisted that the dispatch means, "Get the barge above Mobile bridge as soon as possible," and as the plaintiff did get it above this bridge, notwithstanding the delay, there was no damage caused by this delay. If this were true, then the damage would be nominal; therefore this demurrer should be overruled because of the nominal recovery.

But, as the question of damages has been discussed by counsel, I shall indicate my opinion now. The dispatch is, "Barge at Mobile bridge. Get them above as soon as possible." "Them" may, under the allegation of the petition, refer to the staves. If, however, it refers to the barge, "above," in this dispatch, does not necessarily or naturally refer to that bridge alone, but rather above in the creek. This is clearly the meaning, taking the statement of the petition as true, and read the dispatch by the light of those facts.

The main question is as to the measure of damages if the dispatch meant, "Get the barge up to the staves as soon as possible." The general rule is that, for the breach of such a contract, the party may re-

cover the actual damage sustained, but then the damage must be both *natural and proximate*.

In *Leonard* v. *New York Tel. Co.*, 41 N. Y. 544, EARL, C. J., states the rule thus:

"The damages must be such as the parties may fairly be supposed to have contemplated when they made the contract. Parties entering into contracts usually contemplate that they will be performed, and not that they will be violated. They may rarely actually contemplate any damages which would flow from any breach, and may frequently have not sufficient information to know what such damages would be. * * * A party is liable for all *direct* damages which both parties to the contract would have contemplated as flowing from its breach, if, at the time they entered into it, they bestowed proper attention upon the subject, and had been fully informed of the facts."

ALDERSON, B., in *Hadley* v. *Baxendale*, 9 Exch. 353, states the rule thus:

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as *may fairly* and *reasonably* be considered either *arising naturally*, *i. e.*, according to the usual course of things, from such breach of contract itself, or such as may *reasonably* be *supposed* to have been in the *contemplation* of *both parties* at the time they made the contract, as *the probable* result of the breach of it."

In the case at bar plaintiff is seeking to recover, not the value of the ordinary use of the barge for the time which he was delayed, but the loss of the staves, which he *might have saved from the high water had he been in condition to use it.* This would be a special, and, I think, a remote, damage, in the sense of not being the *usual* and a *direct* damage arising from the non-use of the barge. Here the barge is not lost by reason of the non-delivery of the dispatch, but a lot of staves are lost, which were intended to be loaded upon it, and then the *high water is the direct cause of the loss.* Those staves *might* have been saved had the barge gotten there in time; but to make the defendant liable for a loss of property which was really lost by the high water, because it *might* have been saved by the use of this barge, seems to me to be going beyond the just rule as to damages in such cases.

The breach is the non-delivery of this dispatch, and the damage should be only the loss of the use of the barge in its ordinary and usual uses; not the loss of other property which was not on the barge, and might never have been on it, even if the barge had been there. *Scheffer* v. *Railroad Co.*, 105 U. S. 249, is a strong case showing how very direct must be the cause of the injury for which damages will be given. There a passenger was so seriously injured by a railroad accident that he became insane, and within eight months committed suicide. They held that the railroad company was not liable in damages for his death, because his own act was the proximate cause.

Demurrer overruled for the reasons given.