Marcus G-. Christ, J.
The decedent, Thomas Francis McMahon, was driving an automobile eastbound on Horace Harding Boulevard, near 138th Street Borough of Queens, New York, at about 9:30 p.m. on July 4, 1951. He was accompanied by his wife and his two children of tender years. At about that time and place a 1948 White tow truck, owned by the City of New York, was being operated by the defendant Jimmie E. Williams, a city employee. Horace Harding Boulevard is divided into three sections, a main central portion, six car lanes in width, three of which are dedicated to eastbound traffic and three to westbound traffic; there is a service road on the north side of the highway and another one on the south side of this main central portion. The service roads are separated from the central portion by separating islands.
Just prior to the collision Jimmie B. Williams was traveling westbound on the north service road and, as he came to 138th Street, he made a left turn into the main and central section of Horace Harding Boulevard. It was his purpose to cross over and to swing back on the south service drive, eastbound in the direction from which he had been coming. The deceased was traveling eastbound on the most southerly lane of the central portion of the highway, and it was at this intersection with 138th Street that the two cars came together.
There was a stop sign controlling traffic on 138th Street as it entered Horace Harding Boulevard. This sign, however, was not notice to Williams for he did not pass it. He was never on 138th Street except as it overlaid Horace Harding Boulevard. However, the accident was caused through the negligence of *144 Williams in proceeding across the main highway without due care. There was no negligence on the part of the decedent.
At the impact of the crash McMahon was thrown forward. He was cut about the head, badly shaken and rendered unconscious. After the accident the decedent went to a hospital and remained there about five hours. He signed himself out against the hospital’s direction. The next day he returned and remained there for two days and later was transferred to a hospital in the Borough of Manhattan, where he remained for a two weeks’ period. He sustained a concussion of the brain, a broken left wrist and he had continuing pains in his chest and in his legs. He was out of work 10 or 12 weeks and then returned to his job as a parts clerk for the refrigerator concern by whom he was employed.
On April 12, 1952, the decedent committed suicide. It is claimed that this suicide was a death springing from a depression psychosis that evolved from the injuries sustained in the accident. There was testimony of a personality change in the decedent after the accident. He was not gay and light as he had been before. He was not interested in doing the things he formerly did, and although he drank before he was injured and occasionally became intoxicated, after the accident his excessive use of alcohol was more frequent.
Despite this, however, he worked regularly at his job and was not incompetent or insane. He was in the exercise of his free will.
This is not a case where one, who is injured, becomes insane, loses his control over his mind and body, and takes his life. This is a situation where a sane man, depressed it is true, but sane nevertheless, superimposes upon the defendants’ negligence, acts of his own will to destroy himself. The defendants’ acts are not the proximate cause of the suicide and they may not be charged with the death of the decedent. In the circumstances of the case one may not aggravate the defendants’ damage by willful and deliberate self-destruction.
In the action for wrongful death, judgment is rendered for the defendants. This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act. Thirty days ’ stay; 60 days to make a case.