Carl M. Stasiof, et al., Plaintiffs-Appellees, v. Chicago Hoist & Body Co., Inc., and Domenick Palmieri, Defendants-Appellants.

## Gen. No. 49,017.

First District, Second Division.

June 30, 1964.

Baker, McKenzie & Hightower, of Chicago (Michel A. Coccia and Francis D. Morrissey, of counsel), for appellants.

George F. Kruse and Harold S. Iglow, of Chicago, for appellees.

MR. JUSTICE BRYANT delivered the opinion of the court.

This is an appeal under section 76(1) of the Civil Practice Act (Ill Rev Stats c 110, § 76.1) from a

judgment entered on a jury verdict on May 8, 1962, finding in favor of the plaintiff, John Little, in the amount of $35,000 and in favor of the plaintiff, Carl Stasiof, in the amount of $10,000 and against the defendants Chicago Hoist & Body Co., Inc., and Domenick Palmieri. Two errors are assigned for reversal: 1. that during the cross-examination of the defendant Palmieri, plaintiffs' attorney posed a prejudicial unfounded question which was not later tied up and which, although stricken from the record, improperly influenced the jury; 2. evidence of an attempted suicide by the plaintiff Little was improperly admitted and improperly motivated the jury in its assessment of damages.

A detailed statement of facts is not warranted in determining this appeal. Plaintiffs were injured through no fault of their own, when a car, which the jury found to have been nudged by defendants' truck, went out of control crossed the center line and collided head-on with the plaintiff's automobile. In the lower court liability was hotly contested between the defendant-counterplaintiff Robert Sabatka, the driver of the car which crossed the center line, and the defendants-appellants Domenick Palmieri, the driver of the truck and Chicago Hoist & Body Co., his employer. The jury absolved Sabatka from liability and found in favor of him against Chicago Hoist & Body Co. and Palmieri. He is not a party to this appeal.

The trial was carried on in a fair manner and the judge and all the attorneys involved have presented a clean record. The one exception of which appellants complain is the following question asked of Mr. Palmieri by plaintiffs' counsel: "And did you make a statement to anyone that you tried to deviate the direction of your car to avoid a bump and because of that this accident happened?" After the question was asked Palmieri's counsel pointed out to the court

117

that such a statement, if made, could form the basis for impeachment. At this point the question was withdrawn without giving Palmieri an opportunity to answer it. In a discussion in chambers thereafter counsel for plaintiffs stated he had no proof such a statement was ever made. The jury was instructed by the court to disregard the question completely. Appellants feel that the failure of the court to allow them to answer the question raised a prejudicial inference against them.

Prior to the posing of the above question Palmieri had been asked a similar question by the attorney for Mr. Sabatka. That question was: "Did you ever tell anybody you swerved to avoid a bump?" Palmieri answered: "I know there was a bump there and I slowed up for that bump." There was no objection made at that time by defendants' counsel. Although the endings of the two questions were different, the purpose of both questions was to determine whether swerving away from the bump had caused the accident and whether a statement had been made to that effect. The fact that a different ending appeared on the second question would not have affected the answer of Palmieri. His answer would have been substantially the same, and the jury must be presumed to be capable of inferring that the second question would have been answered in a similar manner had the witness been allowed to continue.

In Dodds v. Chicago Transit Authority, 9 Ill App2d 388, 132 NE2d 816 (1956, abst) a defendant, Brouilette, who was called as an adverse witness by the plaintiff, was asked the following question: "Did you ever admit to anyone that you ran a red light, Mr. Brouilette?" After counsel had stated he had no further questions to ask, counsel for Brouilette objected to the question. The court then inquired as to whether counsel for plaintiff had any evidence on the question, and counsel

stated that he did not. The lower court then stated: "The propriety of putting that question—it is objectionable unless you would have some evidence to produce later that such a statement was made or that such an admission was made." Sustaining the objection, the court instructed the jury to disregard the question and answer. The appellate court stated:

". . . Brouilette was a party to the suit and at the time of the occurrence he was being examined by the plaintiff under section 60 of the Practice Act, which provides that an adverse party 'may be examined as if under cross-examination.' A greater latitude is permitted in cross-examination of a party in interest than in that of an ordinary witness. Felsenthal Co. v. North. Assur. Co., 284 Ill 343, 351. If the question objected to had been answered in the affirmative, the answer would have had substantive value and would not be merely impeaching. It would have been an admission on the part of the defendant. It would not have been conclusive, but it could properly have been considered by the jury. In questioning a party to the suit in an attempt to bring out an admission it is not necessary to lay a foundation as in the case of an ordinary witness (Johnson v. Peterson, 166 Ill App 404), and the decisions have allowed counsel attempting to get in evidence an admission from a party a very broad latitude (Chicago City Ry. Co. v. Canevin, 72 Ill App 81; Green v. Jennings, 184 Ill App 340). However, we feel that asking a question such as here propounded when counsel had, as he admits, nothing, not even suspicion, upon which to base it, was improper; and the trial court, as soon as it was brought to its attention, properly sustained the tardy objection and instructed the jury to dis-

regard the question and answer. The question as to the latitude of cross-examination is within the sound discretion of the court. . . . Considering the previous testimony of Brouilette, it would be a strained concept of the process of jury deliberation to conclude that an average jury would be so impressed and prejudiced by the question and negative answer, in spite of the fact that the court had instructed them to disregard them, that they would draw therefrom an inference that Brouilette had entered the intersection on a red light. Such a construction is not in accord with common experience; and in any case there was evidence to sustain a finding of the jury, that Brouilette was negligent. Under all the facts and circumstances in the case the court did not err in denying the motion of the defendant to withdraw a juror and declare a mistrial, and no injury thereby resulted to the defendant Brouilette."

■ Although the above reasoning seems peculiarly apropos to the facts of this case, each case must turn on its own facts. It is our belief that this record is substantially clean; that the jury could not within reason have been expected to draw an inference contrary to the previously stated answer of the defendant to a similar question; and that there was ample evidence apart from this occurrence to sustain a verdict against the defendants-appellants. Although the posing of one unfounded question is error it is of the kind commonly referred to as harmless. If a pattern of such questions appeared in the record we would be inclined to rule otherwise.

The second question for review concerns the introduction into evidence of the attempted suicide of the plaintiff, John Little, some five years after the acci-

120

dent. The introduction of the incident was for the purpose of establishing continual head injury over a period of years becoming so intensive as to compel an attempt upon his own life by John Little. Dr. Dolehide, a general surgeon and plaintiff's treating physician, testified in respect to plaintiff's injuries and symptoms both at the time of the accident and at the time of the attempted suicide. The record establishes that subsequent to the accident plaintiff's head was severely lacerated and there was evidence that he sustained a fractured skull. Both plaintiff and his wife testified to recurring headaches, nervousness and insomnia growing in intensity following the accident. Dr. Dolehide testified that at the time of the attempted suicide plaintiff told him in the emergency room that he had taken poison. Examination at that time disclosed an individual in an acute state of anxiety with complaints referable to his mouth, chest and abdomen and that there was injury to the mucous membranes with oral ulceration, which condition did not exist prior to this event.

■ Appellants rely on the principle that there is no liability in a cause of action predicated on prior negligence for injuries suffered later by the victim in a voluntary attempt to commit suicide. Scheffer v. Railroad Co., 105 US 249 (1881); Daniels v. New York, N. H. & H. R. Co., 183 Mass 393, 67 NE 424 (1903); McMahon v. City of New York, 141 NYS2d 190 (1955); Tate v. Canonica, 180 Cal App2d 898, 5 Cal Rptr 28; 11 ALR2d 751; 23 ALR 1271; 35 ALR 1447; 79 ALR 351, 353, 370–372; Green, Rationale of Proximate Cause (1927) p 38. Appellees rely upon Harper v. Industrial Commission, 24 Ill2d 103, 107, 180 NE2d 480 (1962), a workmen's compensation case which allowed recovery for a death benefit where a compensable industrial injury was followed by a suicide.

121

We do not believe that this case is in point because the doctrine of proximate cause has no relation to the workmen's compensation cases and the public policy is entirely different. 11 ALR2d 751, 754; Keller v. Industrial Commission, 350 Ill 390, 396, 397, 183 NE 237 (1932).

■ The substance of the cases which hold that there is no recovery for a suicide or attempted suicide following a tortious act is that the act of suicide is an independent intervening act which the original tortfeasor could not have reasonably expected to foresee. The boundaries of the proximate cause rule have been fixed at this point. Green, p 38. There is an apparent exception to the rule where, as the proximate result of an injury upon his head caused by the negligence of another; the person injured becomes insane and bereft of reason, and while in this condition and as a result thereof he takes his own life. His act in this case is not a voluntary one, and therefore does not break the causal connection between the suicide and the act which caused the injury. Elliott v. Stone Baking Co., 49 Ga App 515, 176 SE 112 (1934); 11 ALR2d 751, 758, 762. A good example of the application of the rule appears in McMahon v. City of New York (supra), where a suicide followed an automobile injury and the court stated at 192:

> "This is not a case where one, who is injured, becomes insane, loses his control over his mind and body and takes his life. This is a situation where a sane man, depressed it is true, but sane nevertheless, superimposes upon the defendants' negligence, acts of his own will to destroy himself. The defendants' acts are not the proximate cause of the suicide and they may not be charged with the death of the decedent. In the circum-

122

stances of the case one may not aggravate the defendants' damage by wilful and deliberate self-destruction."

■■ During the course of the present trial, counsel for defendant did not specifically object to the admission of any evidence on the suicide incident, nor specifically object to the competence of Dr. Dolehide, a general surgeon, to establish the proper foundation establishing a causal connection. He did object to admission of the incident without a proper foundation tying it to the accident. The rule in Illinois on the assessment of damages is that the question whether any causal connection between the alleged injury and the damages allegedly sustained is a question of fact for the jury to determine. Smith v. Illinois Valley Ice Cream Co., 20 Ill App2d 312, 322, 156 NE2d 361 (1959); Seyferlich v. Maxwell, 28 Ill App2d 469, 473, 171 NE2d 806 (1961); 15 ILP Damages §§ 261, 262. Rarely does a question of causality become a question of law. Libby, McNeil & Libby v. Illinois Dist. Telegraph Co., 294 Ill App 93, 103, 104, 13 NE2d 683 (1938); Ellison v. Sinclair Refining Co., 41 Ill App2d 436, 190 NE2d 635 (1963). In most of the suicide cases alluded to above the court of review made a determination whether the facts of the case indicated that the victim acted during a frenzy or delirium. Upon determining that the facts did not support such an inference the court would find as a matter of law that there was no proximate causal connection between the first injury and the subsequent suicide. Thus in Arsnow v. Red Top Cab Co., 159 Wash 137, 292 P 436 (1930) the court stated:

"Following the authorities above referred to, we hold that, from the undisputed testimony contained in the record before us, it must be determined as a matter of law that plaintiff failed to

123

produce evidence which can support a finding of the jury in her favor to the effect that her deceased husband, at the time he killed himself, was laboring under such mental disability as can be denominated frenzy, and was therefore entirely ignorant of the natural consequence of his act in pulling the trigger of his pistol while the muzzle was pressed to his head, or, on the other hand, that in so shooting himself he was moved by an uncontrollable impulse within the rule laid down by the authorities above referred to."

Applying the above principles to this case, although it could readily be construed as a question of fact as to whether any causal connection existed between the collision and the attempted suicide five years thereafter, it was the duty of the court to strike all evidence relating to the attempted suicide as a matter of law upon ascertaining that the plaintiff had lived a reasonably normal sane existence for five years and was capable of forming a rational intention to independently take his own life. Although the above rule has been criticized (Green, 37, 38) we have found no case to the contrary. The defendants have unquestionably been prejudiced by the introduction of this evidence.

In accordance with the views expressed herein the judgment in favor of Carl Stasiof is affirmed. The judgment in favor of John Little is reversed and the cause as to him is remanded with directions to let the verdict as to liability stand and for a trial as to damages.

Affirmed in part, reversed in part, and remanded for further proceedings.

BURKE, P. J. and FRIEND, J., concur.