Tahiko Laukkanen, Bank of Illinois in Champaign as Conservator of the Estate of Tahiko Laukkanen, Incompetent, Plaintiff-Appellee, v. Jewel Tea Co., Inc., a Corporation; C. E. Mulliken; Charles N. Debes; Bel-Vue Homes, Inc., a Corporation; Piggly Wiggly Midwest Co., Inc.; John M. Giolitto and Harry N. Cordes, Defendants. Charles N. Debes and Harry N. Cordes, Defendants-Appellants.

Gen. No. 10,678.

Fourth District.

December 29, 1966.

154

T. G. Knappenberger, of Champaign, Yates, Fisk, Haider & Burke, of Chicago (Tom L. Yates, of counsel), and Stanley J. Roszkowski, of Rockford, for appellants.

Wheat, Hatch, Corazza & Baker, of Champaign (Harold A. Baker, of counsel), for appellee.

CRAVEN, P. J.

This appeal arises from the denial of defendants' post-trial motion. Plaintiff received a verdict of $250,000 for personal injuries sustained on April 30, 1962. The plain-

* See Callaghan's Illinois Digest, same topic and section number.

tiff was rendered a paraplegic when a pylon * which was part of a building designed by the defendants, toppled and struck her as she attempted to enter the building in a severe thunderstorm accompanied by hail and high winds. Judgment against the defendants in the amount of $205,000 was entered below after credit of $45,000 was allowed because of payment received by plaintiff from others in exchange for covenants not to sue. The post-trial motion requested judgment n. o. v. upon the theory that there was no liability as a matter of law on the part of these defendants to the plaintiff and, in the alternative, a new trial on grounds that the evidence was insufficient to sustain the verdict, and that there were prejudicial errors in the admission and rejection of the evidence and in instructions given to the jury. There is no issue concerning the amount of the award.

The defendants are licensed mechanical and professional engineers in the State of Illinois. At the time the plans and specifications were drawn defendant Cordes was an employee of defendant Debes.

The complaint alleges that during the year 1958 the defendants prepared architectural drawings and specifications for the construction of a building which they knew was for public use as a retail grocery store, and that subsequent to the furnishing of the design and specification, the building was constructed in Rantoul, Illinois, in substantial conformity with the defendants' plans.

A hollow concrete block pylon with brick facing was designed by the defendants as a part of the south eighteen feet of the west wall of the building. The west end of the adjacent south wall contained the customers' entrance

---

* See Eisner Food Stores v. Industrial Commission, 33 Ill2d 474, 211 NE2d 683 (1965), in which case this pylon is described and there is a discussion of the weather conditions on the day of this injury.

and exit doors. This pylon extended thirty-eight feet into the air from the ground level. The top of it was approximately twenty-one feet higher than the parapet of the perimeter walls. The facing of the building also made up the facing of the pylon to the height of the remainder of the walls; from then up the facing was brick. The outer dimensions of the pylon were three feet four inches by eighteen feet.

The complaint further alleges that the defendants knew that the concrete block pylon they designed would be located directly above the entrance to the grocery store and that any defects in the structure would not be capable of discovery by the public. It charges that the defendants failed to exercise the care exercised by a reasonably well qualified engineer designing a similar building, in that the defendants failed to design a pylon that was structurally strong and the defendants knew or should have known that (a) the pylon as designed was not structurally sound; (b) the pylon was incapable of withstanding the windload force reasonably to be expected at the building site; (c) the pylon was of an aerodynamic shape which rendered it eminently dangerous and incapable of withstanding the windload force reasonably to be expected at the building site.

The complaint further alleged that on April 30, 1962, at about 1:30 p. m., Tahiko Laukkanen was entering the store when the pylon collapsed or tumbled over and fell upon her as a direct and proximate result of one of the negligent acts of the defendants.

The defendants' answer denied the allegations of negligence and proximate cause, and affirmatively alleged that the cause of the pylon collapse was an act of God for which the defendants were not responsible; further that the plaintiff's cause of action was barred by the statute of limitations (Ill Rev Stats 1963, c 83, § 24f); and further that the defendants' only duty in the prem-

ises was to prepare the plans and specifications or check them for structural adequacy, and they did not supervise the construction of the store designed by them.

At the trial of the case, plaintiff's evidence included photographs taken of the building following the damage of April 30, 1962, weather records for the day in question and wind records for many years prior to the occurrence, the plans and specifications furnished by the defendants for the building, and a copy of the 1955 National Building Code, which was in effect at the time the building was designed.

The contractor who constructed the building and the pylon in question testified that the pylon was erected in the manner and with the materials called for by the plans and specifications furnished by the defendants, with the exception that limestone facing was provided for the lower portion of the exterior wall of the pylon and the limestone was bonded to the concrete block interior walls of the pylon in an approved manner but not according to the scheme of the defendants. There is no evidence tending to prove that these variations in actual construction from the defendants' plans reduced the strength of the pylon below the strength which the defendants believed they had built into the pylon. An expert witness testified to his opinion that the pylon, as built, would not withstand winds in excess of 75 mph because of the use of the lightweight concrete block. He stated that defendants' plans specified such a block. The contractor confirmed his use of lightweight concrete block in the pylon construction and that the lightweight block was what was called for by the plans and specifications as he understood them. An employee of another local contracting firm testified, on rebuttal, that lightweight concrete block was called for by the defendants' plans and specifications.

The weather records for April 30, 1962, showed that at 1:27 p. m. local time, the wind was recorded at 76 knots

(87.4 mph) at Chanute Air Force Base, a few miles distant from the building in question. The photographs show that the entire upper portion of the pylon collapsed, leaving standing a few courses of concrete block facing above the roof line of the building in question. The portion of the pylon which formed a part of the exterior walls of the building to a height of approximately thirteen feet remained standing including that portion faced with limestone.

The defendants did not view the building in the process of construction, did not supervise or otherwise participate in the actual construction of the pylon or building in question. They drafted and approved the plans and specifications, and had nothing more to do with the building or pylon in question subsequent to sometime in 1958.

The plans introduced into evidence indicate that a revision of the detailed drawings showing the construction of the pylon occurred on September 10, 1958, and that the defendant Cordes approved the plans for structural adequacy on May 5, 1958. Defendant Cordes' seal as a registered structural engineer and defendant Debes' seal as a registered professional engineer both appear on the pages of the plans relating to the method of constructing the pylon in question.

There was testimony from the plaintiff's expert which tended to prove that the wind in question, while of more intensity that any other wind recorded by the Weather Bureau since records were kept at Chanute Air Force Base, was within the range of winds to be expected in Rantoul, Illinois, the location of the building in question.

The defendants contended that usage of the industry prescribed heavy concrete blocks for the pylon would have a 50 percent safety factor built in. They admitted, however, that if lightweight block were used, the safety factor would be reduced to 10 percent in a sustained 80 mph wind. Gusts of wind were shown to have a more

adverse effect on structures than sustained winds of the same speed.

On this evidence, the jury was justified in finding that the failure of the defendants to specify with particularity that a standard heavy concrete block was to be used in constructing the pylon, instead of lightweight aggregate concrete block specified for use in other portions of the building, resulted in the pylon's being built with inadequate strength to withstand the winds which accompanied this severe storm. This determination is a finding that the defendants did not use the degree of skill ordinarily and customarily used by members of the defendants' profession under similar circumstances.

If the defendants' plans and specifications were not wrong in specifying lightweight concrete block for the pylon, the least that could be said was that they were ambiguous respecting the type of block to be used. The ambiguity, unfortunately, was resolved by the owner and builder by the use of lightweight aggregate concrete block. This lightweight, 38-foot high pylon was placed by defendants in the immediate vicinity of the entranceway to be used by the general public, where a severe wind sent it toppling down.

The defendants can escape liability for this occurrence as a matter of law only if the duty which they had to furnish adequate plans and specifications for the construction of this building did not extend to plaintiff as a member of the general public. Defendants contend that the duty extended only to the party who contracted for their services, and since the plaintiff was neither a party to the contract nor in privity with someone who was she cannot recover directly from them. Defendants point out that they were not hired to supervise the construction of the building they designed. They say lightweight block was not the building material they intended for the pylon. They desired standard, heavy-duty blocks to be used and they say their lack of opportunity to observe the con-

struction or object to the use of lightweight blocks in the pylon insulates them from direct liability to the plaintiff.

■ We do not believe that privity of contract is a prerequisite to liability. This action is ex delicto, not ex contractu. The central issues revolve around a charge that defendants failed to exercise that degree of care in the performance of professional duties imposed upon them as members of a licensed profession which exists in large part to prevent harm to the public from structurally unsafe buildings. The building in question was certified as structurally adequate. It was to be occupied and used by the public for business purposes, and the defendants knew it. If contract law should play any part in our determination, it would be our conclusion that plaintiff was a third-party beneficiary of the contract of structural adequacy between the owner and the defendants. However, we do not base our decision upon the law of contract. We conceive that the defendants owe a duty to respond in damages to those members of the general public who can be reasonably anticipated to be present in the structure they designed when negligence in design is a causal factor in injuries sustained through collapse of the building.

The parties agree that the legal duty of the defendants here is the same as the duty imposed upon an architect under the same circumstances. That duty is described in 5 Am Jur2d, Architects, § 23, at 686–687, as follows:

> "Liability rests only on unskilfulness or negligence, and not upon mere errors of judgment, and the question of the architect's negligence in the preparation of plans is one of fact and within the province of the jury." . . . (Footnotes omitted.)

In this regard, see our discussion in Miller v. DeWitt, 59 Ill App2d 38, 85–98, 208 NE2d 249, 272–277 (4th Dist 1965). This case, No. 39428, is pending in the Supreme

Court, petition for rehearing having been allowed. While these defendants did not supervise construction of the building, the jury here found it to be *their plan* that was defective, not the *construction*.

■ The owner of the building, or the occupier, is not an insurer of the safety of a business invitee upon his premises. 28 ILP, Negligence, § 51, at 37. The position of defendants that a person injured by a building collapse must seek recovery against the owner only, and that then the owner can seek indemnity against the designer in a proper case, ignores the reality that an owner might successfully defend a case such as this brought by a plaintiff injured in the manner and under the circumstances disclosed by this case. The plaintiff in such a suit would be remediless although the victim of an admittedly negligent act of the designer.

■■ The recent doctrine of strict liability for defects in manufactured products announced in Suvada v. White Motor Co., 32 Ill2d 612, 210 NE2d 182 (1965), does not apply here. A designing engineer cannot be held to the liability of a manufacturer. If the fact that the defendants did not supervise the construction of their design has legal significance, that is where such significance lies. But to prohibit recovery from injuries caused by his negligently drawn plans, upon the ground that no contractual relationship existed between the injured member of the public and the negligent furnisher of the plans, is to enforce outmoded concepts of liability dependent upon contract-law doctrines that no longer belong in the law of tort liability. Negligence which proximately causes injury will require the negligent actor to respond in damages for the harm suffered, where the injury is foreseeable, regardless of the prior relationship of the parties.

The doctrine of strict liability, announced in Suvada, is not here applicable, but the language of the court in that opinion is applicable in that privity of contract is not and cannot be a condition precedent to tort liability.

■ We believe that the evidence in this case created a question of fact for the jury on the issues of negligence and proximate cause, and that the jury was justified in concluding that the defendants were negligent in designing a building containing the pylon at the location chosen by defendants to be constructed of lightweight concrete block, and that the injury to the plaintiff was foreseeable and was proximately caused by the defendants' breach of duty to members of the public. Pfister v. West, 53 Ill App2d 305, 203 NE2d 35 (1st Dist 1964).

■ The defendants' defense of an act of God was also a jury question and we cannot say, based upon the evidence adduced at the trial, that the jury's failure to return a verdict in favor of the defendants based on that defense was error.

The defendants likewise are unable to avoid liability on the ground that the statute of limitations is a bar to the plaintiff's action. The relevant statute relied upon is as follows:

> "No action to recover damages . . . for injury to the person, or bodily injury . . . arising out of the defective and unsafe condition of an improvement to real estate, . . . shall be brought against any person performing or furnishing the design, [or] planning, . . . of such improvement to real property, unless such cause of action shall have accrued within four years after the performance or furnishing of such services. . . ." Ill Rev Stats 1963, c 83, § 24f.

This act does not establish a date by which an action must be filed. It establishes a date by which an injury must occur to be actionable. The legislature, by placing a specific limitation on the time within which an injury must occur in relation to the negligent performance of services involving design of a building, acknowledged the existence of the plaintiff's cause of action in this case. There is no evidence in this record which established on behalf of the defendants that the services they performed

were completed more than four years prior to the date of the plaintiff's injury.

The defendant Debes testified that the defendants' services were completed when six sets of the plans were turned over to the owner. Sheet NS–5 of defendants' drawings (which contain detail of the pylon) establishes May 5, 1958, as the date that six sets of the plans in question were turned over to the owner. We, therefore, hold that defendants did not prevail as a matter of law on the defense of the statute of limitations.

We hold that within the well-settled doctrines which apply to negligence cases and jury decisions, the defendants were not entitled to a favorable ruling on their post-trial motion for judgment n.o.v. Lindroth v. Walgreen Co., 407 Ill 121, 94 NE2d 847 (1950), and cases therein cited.

██ We have examined the defendants' contentions with respect to the admission and rejection of evidence, and find that they are without merit. We have further examined the defendants' contentions with respect to errors in instructing the jury. Defendants contend that IPI 15.01, given as plaintiff's Instruction No. 4, should not have been given in its entirety. That instruction defines proximate cause. Defendants say that the inclusion of the language,

> "It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury."

in effect, denied defendants a fair consideration of their "act of God" defense. The jury was properly instructed as part of court's Instruction No. 2 to the effect that if the wind which blew over the pylon in question could not have been foreseen by the defendants, then they were not liable to the plaintiff, and we fail to see how the quoted language in the instruction on proximate cause

164

could mislead the jury to the defendants' prejudice in the light of the clear statement of the issues in a separate instruction.

■ Additionally, in view of the defendants' contention and evidence that the contractor was at fault for using lightweight blocks, which the jury could believe and still hold the defendants liable for separate fault, we believe that the instruction was not misleading in the light of all the evidence.

■ We have examined the other alleged errors in instructions. We find that, as a whole and taken as a series, the instructions fairly and impartially presented the issues made by the pleadings and evidence to the jury and there was no error in the giving of any instruction the jury received nor was there any error in refusing defendants' tendered instructions. The absence from the instructions of the phrase "act of God" in relation to the wind was not error. Beckert v. Risberg, 33 Ill2d 44, 210 NE2d 207 (1965); Schwarz v. Adsit, 91 Ill App 576 (1899).

■ The evidence disclosed that the defendants were required, in their profession and by the 1955 National Building Code on which they relied, to design for resistance to wind pressure, among other things. The amount of expected wind was a matter of degree. There was no evidence of a tornado or catastrophe in the neighborhood. Foreseeability was the true issue, and the instructions were proper as framed. Blue v. St. Clair Country Club, 4 Ill App2d 284, 124 NE2d 346 (4th Dist 1955), *revd on other grounds,* 7 Ill2d 359, 131 NE2d 31 (1956).

For the above and foregoing reasons, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

SMITH and TRAPP, JJ., concur.