IVAN LA BOMBARBE, Adm'r of the Estate of George Martin La Bombarbe, Deceased, Plaintiff-Appellant, v. PHILLIPS SWAGER ASSOCIATES INC., Defendant-Appellee (Champaign County, Defendant).

Fourth District   No. 4—84—0524

Opinion filed February 15, 1985.

James J. Hagle and John Gadau, both of Zimmerly, Gadau, Stout, Selin & Otto, of Champaign, for appellant.

Davis & Morgan, of Peoria (William R. Kohlhase and Jeffrey Alan Ryva, of counsel), for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:
On December 5, 1983, plaintiff, Ivan La Bombarbe, administrator of the estate of George Martin La Bombarbe, deceased, filed a wrongful-death action (Ill. Rev. Stat. 1981, ch. 70, par. 1) in the circuit court of Champaign County against defendants, Phillips Swager Associates, Inc. (Associates), and Champaign County. The complaint sought damages resulting from the suicide of plaintiff's decedent while an inmate in the Champaign County jail. The complaint alleged that Associates (1) was the architectural firm which had designed the jail, and (2) had negligently provided for "grilles on heating and air conditioning ducts [in the cells] that presented anchor points" from which the decedent hanged himself. Upon Associates' motion, the circuit court dismissed the complaint as to Associates for failure to state a cause of action. The order of dismissal contained a finding under Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)) making the order appealable. Plaintiff has

appealed. We affirm.

Associates' motion to dismiss asserted that (1) the count directed against Associates failed to state a cause of action because decedent's intentional act of suicide was the sole proximate cause of his death, and (2) plaintiff could not plead a set of facts which would permit recovery. Defendant has focused its argument on the theory of the lack of proximate cause. Such a focus does not produce a proper analysis of the issues here. Rather, we conclude that the essential question in this case is whether Associates had a duty of care to prevent the suicide of the decedent. Decisions of the supreme court have indicated that, given some showing of causal relationship between an act and an injury, the existence of proximate causation is generally a question of fact. (*Paul Harris Furniture Co. v. Morse* (1956), 10 Ill. 2d 28, 139 N.E.2d 275; *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836.) On the other hand, under recent decisions, the existence of a duty is a question of law. *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617; *Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307.

The parties do not dispute that foreseeability is a prime element of proximate cause. (*Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 50 N.E.2d 497.) In contending that the suicide of the decedent was not reasonably foreseeable by Associates, it relies upon the cases of *Scheffer v. Washington City, Virginia Midland & Great Southern R.R. Co.* (1882), 105 U.S. 249, 26 L. Ed. 1070, *Stasiof v. Chicago Hoist & Body Co.* (1964), 50 Ill. App. 2d 115, 200 N.E.2d 88, and *Little v. Chicago Hoist & Body Co.* (1965), 32 Ill. 2d 156, 203 N.E.2d 902, where suicides by an injured party were held, as a matter of law, to have not been reasonably foreseeable consequences of tortious conduct. However, in those cases the parties committing suicide received some injury by a tortfeasor and, later, because of the nature of the injury received, committed suicide. Here, the suicide would be a more direct result of the alleged negligence of Associates. If we assume that Associates had a duty to design the cells in such a way that the decedent would have had no "anchor points" to use in a suicide attempt, then it is difficult to determine, as a matter of law, that the decedent's suicide by use of those "anchor points" was not reasonably foreseeable.

Accordingly, we shall proceed to determine whether the complaint alleges a duty on Associates and a breach of that duty. The question is before us because of Associates' assertion, in its motion to dismiss, that plaintiff could not plead a cause of action from the facts presented. In *Lance v. Senior* (1967), 36 Ill. 2d 516, 224 N.E.2d 231, Mr. Justice Schaefer, in describing the elements of duty, wrote that foreseeability is one, but by no means the only, element of duty. The others listed were "[t]he likelihood of injury, the magnitude of the burden of guard-

ing against it and the consequences of placing that burden upon the defendant." (36 Ill. 2d 516, 518, 224 N.E.2d 231, 233.) There, the court held that a complaint, which alleged that the defendants negligently permitted a 9-year-old hemophiliac to play with a needle which he swallowed, was properly dismissed because it failed to allege facts setting forth a breach of duty.

The decisions of this court have made clear that in designing a building an architect owes a duty, to those who would be likely to use the structure, to exercise care that the design is safe for the building's intended use. (*Miller v. DeWitt* (1965), 59 Ill. App. 2d 38, 208 N.E.2d 249, *aff'd in part, rev'd in part on other grounds* (1967), 37 Ill. 2d 273, 226 N.E.2d 630; *Laukkanen v. Jewel Tea Co.* (1966), 78 Ill. App. 2d 153, 222 N.E.2d 584.) Litigation in the circuit court of Du Page County has resulted in precedent that jailors, under certain circumstances, owe to inmates a duty of care to see that the inmates do not commit suicide. In *Dezort v. Village of Hinsdale* (1976), 35 Ill. App. 3d 703, 342 N.E.2d 468, the Second District reversed and remanded a summary judgment against the personal representative of a deceased inmate who had brought an action for negligence in the operation of the village jail which had permitted the decedent to hang himself. The jailors had special reason to anticipate that the inmate might kill himself, for the evidence indicated that the inmate was intoxicated and had announced he might do so. The court held that the jailors were under a duty to use reasonable care in protecting the inmate and that a factual question had been raised as to whether the jailors were negligent. On appeal from a judgment on a verdict for defendant after a trial on remand, the appellate court reversed again for error in an instruction on contributory negligence. (*Dezort v. Village of Hinsdale* (1979), 77 Ill. App. 3d 775, 396 N.E.2d 855.) Finally, after further remand and trial on the merits, a judgment for defendant was entered and affirmed on review. *Delasky v. Village of Hinsdale* (1982), 109 Ill. App. 3d 976, 441 N.E.2d 367.

While precedent has established the duty of an architect to design a safe jail and the duty of a jailor to protect inmates known to be likely to commit suicide from doing so, no case holding that an architect has a duty to design a jail in such a manner as to prevent an inmate from committing suicide has been called to our attention.

As we have previously indicated, it is reasonably foreseeable that an inmate may attempt suicide. The court in the first *Dezort* case so indicated. Plaintiff has called our attention to an article appearing in 12 Criminal Justice Newsletter No. 24 (December 7, 1981), which states the plausible statistic that suicide occurs among inmates in jails at a frequency 16 times greater than that among the general public. How-

ever, the foreseeability among inmates in general is much less than that among those inmates, such as in *Dezort,* who threaten to commit suicide. In any event, it is because of the failure of the other elements of duty rather than that of foreseeability that we hold that Associates was under no duty here to design jail cells without grilles.

The reason that such a duty should not be imposed on Associates is illustrated by the newsletter article which plaintiff has cited to indicate the foreseeability of inmate suicides. The article refers to a study by the National Center on Institutions and Alternatives. According to the article, the study stresses the importance of jailors identifying suicide-prone inmates. The article then states:

> "Such precautions as barless windows and doors, tearaway blankets and television monitors should not be substituted for human interaction. The precautionary tools used to prevent suicide are *insufficient* and often times are designed for the convenience of jail personnel and not for the benefit of the inmate, the study said." (Emphasis added.) (12 Criminal Justice Newsletter No. 24, at 3 (December 7, 1981).)

The magnitude of the burden placed on architects to eliminate all fixtures, such as grilles, that might be of aid in the commission of a suicide and, at the same time, to design an attractive and feasible cell at a reasonable cost would seem to be great. Yet, according to the article, the resultant design would be insufficient to protect the inmate from his self-inflicted destruction. The cost of placing this relatively useless burden upon architects would likely cause further increase in the already extremely high cost of housing prisoners.

Associates argue that recovery should be denied because the decedent's act of committing suicide was morally and legally wrong. No recent decision of a court of review of this State has denied recovery because of a common law principle that one's estate cannot benefit by one's suicide if a breach of duty by another is a proximate cause of the suicide. The precedence of *Dezort* is to the contrary. However, the fact that the act of the decedent here giving rise to plaintiff's claim for recovery was an act by an adult of a self-infliction of injury, and a wrongful act, has some materiality in our determination as to the extent to which the law should reach in imposing a duty on a person or entity, such as Associates, to exercise care in preventing the act.

We affirm the order dismissing the complaint as to Associates.

Affirmed.

MILLS, J., concurs.

TRAPP, J., specially concurring:

I concur in the disposition and analysis of the principal opinion, but I believe that it should be made explicit that the duty of the defendants, as architects, should be more clearly distinguished from any inference that an architect's duty is to be determined upon the standards defined in the cited *Dezort v. Village of Hinsdale* and *Delasky v. Village of Hinsdale*.

In those cases, the duty of the police officers was said to be determined by the *circumstances of the particular case,* with more specific reference to the officers' observation of the physical condition of the prisoner, his conduct and statements, and from other information acquired during the course of the arrest procedure.

However, in *Miller v. DeWitt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630, and *Laukkanen v. Jewel Tea Co.* (1966), 78 Ill. App. 2d 153, 222 N.E.2d 584, it is stated that the common law duty of an architect in matters of design is to exercise that degree of skill and care that is customarily used by competent architects in the community. See Annot., 97 A.L.R.3d 455, (1980).