Jessie Leon Tittle, the plaintiff, appeals from a summary judgment entered in favor of the defendants, Giattina, Fisher Company, Architects, Inc. (hereinafter referred to as the "architects"), and Jefferson County, the Jefferson County Commission, and David Orange, in his official capacity as a Jefferson County commissioner (all three hereinafter collectively referred to as "the County defendants"), in Tittle's wrongful death action, which he filed as personal representative of the estate of Stephen Warren Tittle.
On October 25, 1988, Stephen Warren Tittle was arrested by the Birmingham police department on a charge of armed robbery. After spending less than six hours in the Birmingham city jail, he was transferred to the Jefferson County jail. On October 28, at about 2:00 a.m., Stephen was found dead, hanging from a six-inch pipe above his bunk.
The plaintiff alleged that the architects had negligently designed the Jefferson County jail and that their negligence had *Page 680 
proximately caused the death. On October 17, 1990, the plaintiff later added a claim against the County defendants. All defendants moved for summary judgment.
The court entered a summary judgment for the defendants and the plaintiff appealed.
The plaintiff first contends that the architects owed the decedent a duty to design the jail so as to prevent his suicide. This Court has stated:
 "In deciding whether to impose a duty in a construction context, the trial court should analyze six factors:
 " ' "(1) [T]he extent to which the transaction was intended to affect the other person; (2) the foreseeability of harm to him; (3) the degree of certainty that he suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury; (5) the moral blame attached to such conduct; and (6) the policy of preventing future harm." ' "
Berkel Co. Contractors, Inc. v. Providence Hospital,454 So.2d 496, 502-03 (Ala. 1984) (quoting Howe v. Bishop,446 So.2d 11 (Ala. 1984) (Torbert, C.J., concurring in the result and quoting United Leasing Corp. v. Miller, 45 N.C. App. 400, 40607, 263 S.E.2d 313, 318, review denied, 300 N.C. 374,267 S.E.2d 685 (1980))).
No case has been decided in Alabama directly on point with the facts presented here. However, our research has revealed a decision from Illinois that addresses the same issue.
La Bombarbe v. Phillips Swager Associates, Inc., 130 Ill. App.3d 896, 86 Ill.Dec. 28, 474 N.E.2d 942 (1985), addressed the issue whether the defendant, an architectural firm, had a "duty of care to prevent the suicide of the decedent." 86 Ill.Dec. at 29, 474 N.E.2d at 943. In analyzing the issue of the defendant architect's duty owed to a prisoner, the Illinois court held that foreseeability is "by no means the only element of duty." The court stated that " '[t]he likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant' " were all elements to be considered in determining whether there was a duty. Id., 86 Ill.Dec. at 30, 474 N.E.2d at 944 (quotingLance v. Senior, 36 Ill.2d 516, 518, 224 N.E.2d 231, 233
(1967)). Illinois precedent had held that "an architect owes a duty, to those who would be likely to use the structure, to exercise care that the design is safe for the building's intended use." Id. (citing Miller v. DeWitt, 59 Ill. App.2d 38,208 N.E.2d 249 (1965), aff'd in part, rev'd in part on othergrounds, 37 Ill.2d 273, 226 N.E.2d 630 (1967); Laukkanen v.Jewel Tea Co., 78 Ill. App.2d 153, 222 N.E.2d 584 (1966)). Also, Illinois law had established that a "jailor [has a duty] to protect inmates known to be likely to commit suicide from doing so." Id. (citing Delasky v. Village ofHinsdale, 109 Ill. App.3d 976, 65 Ill.Dec. 454, 441 N.E.2d 367
(1982)). However, in La Bombarbe the court held that an architect had no duty to design a jail in such a manner as to prevent an inmate from committing suicide.
The court based its decision not upon foreseeability (which the court found), but upon those other elements of duty:
 "The reason that such a duty should not be imposed on [the defendant] is illustrated by the newsletter article which plaintiff has cited to indicate the foreseeability of inmate suicides. The article refers to a study by the National Center on Institutions and Alternatives. According to the article, the study stresses the importance of jailers' identifying suicide-prone inmates. The article then states:
 " 'Such precautions as barless windows and doors, tearaway blankets and television monitors should not be substituted for human interaction. The precautionary tools used to prevent suicide are insufficient and oftentimes are designed for the convenience of jail personnel and not for the benefit of the inmate, the study said.' (Emphasis added.) (12 Criminal Justice Newsletter No. 24, p. 3 (December 7, 1981).)
 "The magnitude of the burden placed on architects to eliminate all fixtures, such as grilles, that might be of aid in the *Page 681 
commission of a suicide and, at the same time, to design an attractive and feasible cell at a reasonable cost would seem to be great. Yet, according to the article, the resultant design would be insufficient to protect the inmate from his self-inflicted destruction. The cost of placing this relatively useless burden upon architects would likely cause further increase in the already extremely high cost of housing prisoners."
Id., 130 Ill. App. 3d at 944-45, 86 Ill.Dec. 28, 474 N.E.2d 942.
The La Bombarbe court also stated that the "fact that the act of the decedent here giving rise to plaintiff's claim for recovery was an act by an adult of a self-infliction of injury and, a wrongful act, has some materiality in our determination as to the extent to which the law should reach in imposing a duty on a person or entity, such as [the defendant], to exercise care in preventing the act." Id. at 945, 86 Ill.Dec. 28, 474 N.E.2d 942.
We hold, based upon the reasoning of La Bombarbe, that an architect designing a prison or jail owes no duty to design the prison or jail to be suicide-proof. The architect owes a duty to design a building that is safe for its intended use; however, that duty does not extend to preventing suicides. Although such suicides may be foreseeable, the conduct is not the type described in Berkel, supra. The degree of certainty that suicides will occur is based not primarily upon prison design, but upon the ability of the jailer to recognize those inmates who exhibit suicidal tendencies and upon the subsequent interaction between inmate and jailer. Also, it cannot be said in this case that the architect's design was "closely connected" to the suicide, but merely that it may have facilitated the act or allowed one form of suicide to be committed rather than another. The plaintiff has provided this Court with records indicating that a number of suicides and attempted suicides have occurred at the Jefferson County jail. We note that most of the suicides and attempted suicides were by hanging, but that other prisoners attempted suicide by different methods, including cutting wrists or other body parts, drowning, electrocution, swallowing a razor blade, and a stab to the stomach.
Therefore, Giattina, Fisher Company did not owe the decedent a duty to design the jail so as to be suicide-proof.
The next issue raised by the plaintiff is whether summary judgment was appropriate as to the County defendants. Neither party argues whether these defendants owed the decedent a duty, but rather whether a duty was breached. In a recent case,Popham v. City of Talladega, 582 So.2d 541 (Ala. 1991), this Court held: "The controlling factor in determining whether there may be a recovery for a failure to prevent a suicide is whether the defendants reasonably should have anticipated that the deceased would attempt to harm himself." Id. at 543. We also held that the " 'foreseeability of a decedent's suicide is legally sufficient only if the deceased had a history of suicidal proclivities, or manifested suicidal proclivities in the presence of the defendant, or was admitted to the facility of the defendant because of a suicide attempt.' " Id. (quotingKeeton v. Fayette County, 558 So.2d 884, 887 (Ala. 1989)).
In the present case, the decedent was clearly not "admitted" to the Jefferson County jail because of a suicide attempt. He was arrested and charged with armed robbery. Also, upon entering the jail he expressly denied a history of emotional and mental problems. The booking officers and the medical officer, in affidavits, stated that during his processing the decedent did not appear to be suicidal. The fact that the decedent did not manifest suicidal proclivities in the presence of the County defendants (or in this case, their agents) during his nearly three-day stay at the Jefferson County jail prior to his suicide is undisputed.
Based upon the above, the summary judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur. *Page 682