582 So.2d 541 (1991)
Kathy Roberts POPHAM, as administratrix of the Estate of Ronnie Edward Popham, deceased
v.
CITY OF TALLADEGA, et al.
1900592.
Supreme Court of Alabama.
May 31, 1991.
Robert L. Wiggins, Jr. and Ann K. Norton of Gordon, Silberman, Wiggins & Childs, Birmingham, for appellant Kathy Roberts Popham.
William Anthony Davis III and E. Martin Bloom of Starnes & Atchison, Birmingham, for appellee City of Talladega.
David A. Lee of Parsons, Lee & Juliano, Birmingham, for appellees Police Chief Mike Hamlin, Officer Randy Jones, Officer Mark Williams, Mayor George Montgomery, Councilman Robert Duncan, Councilwoman Edith Sims, Councilman Charles Miller and Councilman Ken Payne.
SHORES, Justice.
The plaintiff appeals from a summary judgment for the defendants in a lawsuit arising out of a Christmas Eve 1987 suicide in the Talladega city jail. Kathy Roberts Popham, as administratrix of the estate of Ronnie Edward Popham, deceased, first filed a complaint in a federal court against the City of Talladega, Police Chief Mike Hamlin, Officer Randy (Ronnie) Jones, Officer Mark Williams, Mayor George Montgomery, and council members Robert Duncan, Edith Sims, Charles Miller, and Ken Payne.
Her federal court complaint stated a claim under Alabama's Wrongful Death *542 Statute, Ala.Code 1975, § 6-5-410, and alleged that the defendants were liable for damages pursuant to 42 U.S.C. § 1983. The United States district court entered a summary judgment for the defendants on June 1, 1989. Popham v. City of Talladega, 742 F.Supp. 1504 (N.D.Ala.1989). The district court dismissed without prejudice the claims made pursuant to the Alabama Wrongful Death Act. The plaintiff appealed that ruling to the Eleventh Circuit Court of Appeals, and that court affirmed. Popham v. City of Talladega, 908 F.2d 1561 (11th Cir.1990).
Thereafter, on June 9, 1989, the plaintiff filed the present wrongful death action in the Circuit Court of Talladega County. On December 4, 1990, the trial court granted the defendants' motion for summary judgment. The plaintiff appeals. We affirm.
On December 24, 1987, Kathy Roberts married Ronnie Edward Popham. During a post-wedding celebration at the home of James and Christine Wilson, Kathy Roberts Popham called the Talladega Police Department and reported a disturbance involving her husband. At approximately 9:07 p.m., Officers Jones and Williams responded to the call and notified Officer Watson for backup. The officers arrested Ronnie Popham for public intoxication. Popham resisted violently, and the officers were required to use force.
Before placing him in a holding cell, the officers removed his belt, his shoes and shoelaces, and the contents of his pockets. Officer Jones testified that before he left Popham in his cell, Popham had calmed down and had begun to cry or whimper.
Sergeant Steven Palmer was on duty at the time Popham was incarcerated. He said that he heard Popham talking, but could not understand what Popham was saying. Palmer stated that he checked on Popham in his cell around 10:18 p.m.
From 10:00 p.m. on December 24, 1987, until 6:00 a.m. on December 25, 1987, David Brooks was the dispatcher; he monitored Popham through a closed-circuit television monitor. Brooks had locked the camera monitor on the holding cell containing Popham. Brooks testified that, from 10:00 p.m. until 11:00 p.m., he saw Popham through the monitor walking around the cell and that he did not notice anything unusual. Brooks said that there were several spots in the cell where a person could lie down and not be observed by the camera. Popham was not seen after 11:00 p.m. from the monitor. Brooks stated that he believed Popham to be "sleeping it off" out of view. Brooks said Popham had been incarcerated in the Talladega city jail several times before and that his behavior that evening was not unusual.
Incarcerated at the same time was Randy Langley, a lifelong friend of Popham's, who had been incarcerated with Popham on several prior occasions. On December 24, 1987, Langley was confined in the second cell down from Popham. Langley said that the officers had to struggle with Popham in order to get him into the cell. Langley also said that Popham sounded drunk and that he cursed, kicked, and spat at the officers who tried to confine him. He said that after the officers left him, Popham screamed and invited them to come back and fight with him.
According to Langley, Popham got very quiet around 11:00 p.m. and told Langley to "make sure my wife and my kids get what they deserve out of this because I'm going to kill myself." Langley said he did not take Popham's threat seriously. Several minutes later, Langley said, he heard a gagging or choking sound coming from Popham's cell. Langley said he was not alarmed because Popham had been spitting and coughing since his admission to the jail that evening. Langley did not attempt to alert the police; he went to sleep. Langley said that Popham had never mentioned suicide to him before. Langley said that if he had believed that Popham was serious about committing suicide, he would have made an effort to alert the guards.
Jailer Thurman Smith discovered Popham hanging from his blue jeans beside the shower stall in his cell at 5:30 a.m. This particular area was outside the range of the monitor.
According to the plaintiff, Popham had attempted suicide one week before the arrest, *543 by taking an overdose of Thorazine. The plaintiff said that on that prior occasion Popham had left a suicide note. The plaintiff testified that she did not believe Popham to be suicidal on the night of December 24, 1987. The plaintiff called the police station around 11:00 p.m. to find out how much it would cost to bail him out of jail. She went to the police station and left some cigarettes for her husband, but at no time did she tell the officers that her husband had recently attempted suicide.
Officers Ronnie Jones and Mark Williams said that Popham never threatened or mentioned suicide during his arrest on December 24, 1987. Chief Mike Hamlin did not participate in the arrest, but was aware that Popham had been incarcerated previously on charges of assault, battery, and public intoxication. Chief Hamlin said he had no knowledge that Popham had suicidal tendencies. Mayor George Montgomery stated that none of the members of the Talladega City Council had participated in Popham's arrest. He had no knowledge of Popham's prior attempt at suicide.
We must determine whether the trial court erred in entering the summary judgment for the defendants. Rule 56, A.R. Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a judgment as a matter of law. In determining whether a summary judgment was properly entered, the reviewing court must view the motion in a light most favorable to the nonmovant. See Turner v. Systems Fuel, Inc., 475 So.2d 539, 541 (Ala.1985); Ryan v. Charles Townsend Ford, Inc., 409 So.2d 784 (Ala.1981).
Rule 56 is read in conjunction with the "substantial evidence rule" (§ 12-21-12, Code 1975), for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). In order to defeat a properly supported motion for summary judgment, the plaintiff must present "substantial evidence," i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
The question before the trial court was whether, in response to the defendants' properly supported motion, the plaintiff produced substantial evidence of a duty owed to the deceased, and that the defendants breached this duty. The controlling factor in determining whether there may be a recovery for a failure to prevent a suicide is whether the defendants reasonably should have anticipated that the deceased would attempt to harm himself. Annot., 11 A.L.R.2d 751, 782-92 (1950). In Keebler v. Winfield Carraway Hospital, 531 So.2d 841 (Ala.1988), this Court held "that foreseeability of a decedent's suicide is legally sufficient only if the deceased had a history of suicidal proclivities, or manifested suicidal proclivities in the presence of the defendant, or was admitted to the facility of the defendant because of a suicide attempt." Keeton v. Fayette County, 558 So.2d 884, 887 (Ala.1989).
Our review of the record shows us that the plaintiff failed to produce substantial evidence that the defendants had the "slightest suspicion" that Popham was going to commit suicide. See Popham v. City of Talladega, supra. Popham had been incarcerated several times in the Talladega city jail. The plaintiff did not tell the corrections officers of his recent suicide attempt. His wife did not inform the defendants of his suicide attempt.
A review of the record shows that defendants used the reasonable care of a jailer in ordinary circumstances in guarding against any suicidal possibility. Officers Jones and Williams removed Popham's belt, his shoes and shoelaces, and the contents of his pockets. Sergeant Palmer also personally checked on Popham at the end of his shift. The cell where Popham was confined was monitored 24 hours a day by closed-circuit television.
*544 Plaintiff argues that, for summary judgment purposes, the fact that there was no night watchman is sufficient to create an inference of negligence per se under Alabama Code 1975, § 14-6-105, which states in pertinent part:
"Prisoners shall not be confined in any jail or prison in this state when such jail or prison is not provided with a deputy, watchman or attendant, whose duty it shall be to watch the jail or prison at night for the prevention of escapes and fire and to aid in case of sickness among the prisoners, and who shall have access to the jail or prison and to the prisoners...."
We do not agree. The record reflects that a dispatcher was on duty at the jail 24 hours a day and that a television monitor was in the cell.
The plaintiff also argues that she presented substantial evidence, through the expert testimony of Dr. Charles Lindquist, that the defendants breached the standard of care that a reasonably competent jailer would ordinarily observe. She contends that his testimony was sufficient to defeat the summary judgment motion. We do not agree, because the suicide was not foreseeable.
The plaintiff cites us to Keeton v. Fayette County, 558 So.2d 884 (Ala.1989), in which this Court overturned the trial court's summary judgment for the defendants. The two cases are easily distinguished. Timothy Keeton, a minor, was incarcerated for the first time because he had failed to return to his father's home after having spent the weekend with his mother. The evidence presented at trial showed that the intercom system used to provide audio monitoring of the cell was broken. There were no television monitors or personal checks made by corrections officers. Keeton ended his life by hanging himself with his own belt.
In contrast, Popham had been in jail several times. Popham's belt, his shoes and shoelaces, and the contents of his pockets had been removed. There had been constant visual monitoring of his cell, as well as a personal check made at approximately 11:00 p.m.
The summary judgment is due to be affirmed.
AFFIRMED.
MADDOX, ADAMS and KENNEDY, JJ., concur.
HOUSTON, J., concurs specially.
HOUSTON, Justice (concurring specially).
As the author of the opinions in both Keebler v. Winfield Carraway Hospital, 531 So.2d 841 (Ala.1988), and Keeton v. Fayette County, 558 So.2d 884 (Ala.1989), I think this case is controlled by Keebler. In the case at issue, and in Keebler and Keeton, the plaintiff's decedent committed suicide while incarcerated in a jail cell. In Keeton, it was reasonably foreseeable, as a matter of law, that minor prisoners might attempt to harm themselves while incarcerated in a county jail, based upon Ala.Code 1975, § 12-15-61, and the "Manual of Operating Procedures: Fayette County Jail Detention Program" adopted by Fayette County to obtain approval by the Department of Youth Services to use cells in the Fayette County jail for adult prisoners for the detention of juveniles. In my opinion, there is no statute or ordinance involved in the case at issue applicable to foreseeability; therefore, in accordance with the general case law, foreseeability of this adult decedent's suicide is a factual issue only if there is substantial evidence that (1) the deceased had a history of suicidal proclivities, or (2) manifested suicidal proclivities in the presence of the defendant, or (3) was admitted to the facility of the defendant because of a suicide attempt. There being no substantial evidence of any of these three conditions, the trial court did not err in granting the City of Talladega's motion for summary judgment. Keebler v. Winfield Carraway Hospital, supra.