This negligence action raises questions of sovereign immunity. The plaintiff, Jack Carlton Smith, as administrator of the estate of Derryl Adus Smith, sued various defendants. Smith appeals from a summary judgment for certain of those defendants: Kent King, Verlee Young, Calvin Campbell, and Von Gibson. Jack Smith initially named 12 individuals as defendants: Glenn Ireland II (commissioner of the State Department of Mental Health), Dr. J.E. Condom (associate commissioner), Charles E. Wells (director of the Thomasville Adult Adjustment Center), Parker Edwards (director of programs at the Thomasville Center), Dr. Margaret Henry (the physician employed by the State to provide medical treatment to patients at the Thomasville Center), Dr. A.G. Arnold (the psychiatrist who examined Derryl Smith), Kent King (a counselor and qualified mental health professional ["QMHP"]), Verlee Young (a counselor and QMHP), Calvin Campbell (counselor), Mary McGee (practical nurse at the Thomasville Center), Ginger Glenn (social worker at the Thomasville Center), and Von Gibson (aide supervisor). As of May 29, 1992, 4 of those 12 were out of the case, either by summary judgment or by dismissal upon agreement of the parties. On May 29, 1992, the trial court granted a motion for summary judgment as to defendants Glenn Ireland II, J.E. Condom, Charles E. Wells, and Parker Edwards, but reserved ruling on the motion for summary judgment as to defendants King, Young, Campbell, and Gibson. Oral arguments were heard regarding these four remaining defendants on June 22, 1992; and on July 27, 1992, the trial court granted these four remaining defendants' motion for summary judgment. The plaintiff appeals from the summary judgment for those four defendants. We affirm. *Page 71 
Derryl Smith committed suicide while he was a patient at the Thomasville Adult Adjustment Center, Thomasville, Alabama. The Thomasville Center is a state-owned mental health facility operated by the Department of Mental Health; it provides selected patients an opportunity to be treated in a low-restrictive environment. The plaintiff alleged that the defendants, knowing, or while they should have known, that Derryl Smith was suicidal, negligently placed him in a seclusion room and allowed him there to hang himself with his pajama bottoms. The plaintiff initially framed his complaint as a medical malpractice action based on the allegations that Dr. Arnold negligently failed to properly diagnose Derryl's suicidal tendencies and that the other defendants negligently failed to realize that Derryl was suicidal and/or negligently failed to make Dr. Arnold aware of what the plaintiff contends were clear indications of Derryl's suicidal tendency.[1]
The plaintiff contends that Derryl had, on several occasions, threatened to harm himself and had, in fact, made such a threat after becoming violent and being secluded on November 15, 1981. He contends that because of those prior occasions these defendants should have been able to predict that, on this particular occasion, Derryl would carry out that threat. The record reveals that on several occasions Derryl had made threats to harm himself and that he had been placed in seclusion several times because of such threats, but the record contains no evidence that Derryl had ever attempted suicide before. The record indicates that such threats are sometimes used as a manipulative device, and the record indicates that Derryl had admitted that he sometimes used such threats to manipulate his parents and the staff at the Thomasville Center.
The Thomasville Center was staffed by mental health professionals, including a psychiatrist, several psychologists, and professional counselors, who were supported by nonprofessional mental health workers. The staff and support personnel possessed a wide range of qualifications and expertise. Derryl was being treated in accordance with an individualized treatment plan developed and monitored by a treatment team that included a counselor, the defendant Calvin Campbell. Campbell's work was continually reviewed by a supervising "QMHP," the defendant Verlee Young, and the entire treatment team met periodically to assess and evaluate the implementation of Derryl's treatment plan. In addition to the day-to-day implementation and assessment of Derryl's treatment plan, there was in effect a policy requiring that a patient's treatment be reviewed every 90 days by a reviewing QMHP, who, in this case, was the defendant Kent King. In addition, Derryl's day-to-day personal needs were provided for by nonprofessional aides responsible for his unit and dormitory. These aides were supervised by the defendant Von Gibson.
On November 15, 1981, Derryl spoke by telephone with his mother, and following that conversation he became extremely agitated and destructive and said that he "would just kill himself." Employees of the Thomasville Center, pursuant to the Center's standard operating procedures, took Derryl's street clothing from him and gave him a pair of pajama bottoms, and confiscated all personal effects with which Derryl might harm himself. The employees placed him in a seclusion room to allow him to calm down and to protect him, the staff, and other patients. When Derryl was placed in seclusion, the implementation of these measures was initially begun by Gibson, the nonprofessional aide supervisor on duty in Derryl's unit. The Center's procedure required that the professional on-call ("POC") be notified immediately when a patient was secluded. In compliance with that procedure, someone notified Ginger Glenn, who came to the dormitory and, after observing Derryl, concluded that seclusion was warranted. Procedures in effect at the Thomasville Center also required that a qualified nurse examine a *Page 72 
patient immediately after he is placed in seclusion, to be certain that he is uninjured and that he is not in need of medical treatment. This function was performed by Mary McGee, a licensed practical nurse (LPN). There was yet another procedural/policy requirement, that the QMHP on-call be notified of a patient's seclusion and the circumstances that necessitated it. The QMHP on call was required, within one hour, to come to the Center and to personally examine the patient, investigate the circumstances surrounding the incident, and either validate the seclusion or order that the patient be released from seclusion. Kent King was the QMHP on-call, and he was notified at about 8:45 a.m. on November 15, 1981, of Derryl's seclusion. He arrived at the Center about 30 minutes later. When he arrived, McGee and other staff members were administering CPR to Derryl. At about 9:20 a.m., the medical doctor, Dr. Margaret Henry, arrived, and, after examining Derryl, she pronounced him dead.
These four defendants contend that at the time of Derryl's death they were employees of the State Department of Mental Health engaged in the performance of duties and functions clearly characterized as discretionary, and, therefore, that they are entitled to claim substantive governmental immunity from tort liability. They further contend that they did not negligently perform their respective duties and that none of them breached any duty owed to Derryl. These defendants argue that they were exercising a discretionary function and, under our caselaw involving state officials, are immune from suit.
It is a generally accepted proposition of law that the State of Alabama and its officers and agents cannot be made defendants in any court, see Ala. Const. art. I, § 14, andHickman v. Dothan City Bd. of Educ., 421 So.2d 1257 (Ala. 1982). The concept of qualified or substantive governmental immunity as a defense against tort liability under certain circumstances is well established in the law of this State. "[W]hether a particular defendant is engaged in a protected discretionary function and is thereby immune from liability for injuries he causes is a question of law to be decided by the trial court."Grant v. Davis, 537 So.2d 7, 8 (Ala. 1988). In regard to this immunity defense, this Court has adopted the tort liability rule for public officers found in Restatement (Second) of Torts
§ 895D, "Public Officers" (1977):
 "(1) Except as provided in this Section a public officer is not immune from tort liability.
 "(2) A public officer acting within the general scope of his authority is immune from tort liability for an act or omission involving the exercise of a judicial or legislative function.
 "(3) A public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if
 "(a) he is immune because engaged in the exercise of a discretionary function,
 "(b) he is privileged and does not exceed or abuse the privilege, or
 "(c) his conduct was not tortious because he was not negligent in the performance of his responsibility."
(Emphasis added.) See Phillips v. Thomas, 555 So.2d 81, 84
(Ala. 1989); Barnes v. Dale, 530 So.2d 770, 783 (Ala. 1988); andDeStafney v. University of Alabama, 413 So.2d 391, 393
(Ala. 1981).
The discretionary function standard is often difficult to interpret. See Smith v. Arnold, 564 So.2d 873 (Ala. 1990), citing Barnes, supra; Hickman, supra; Bell v.Chisom, 421 So.2d 1239 (Ala. 1982), and DeStafney, supra. In determining what is a discretionary function, we have recognized certain factors that may be considered, including the following:
 "[1] The nature and importance of the function that the officer is performing; [2] the extent to which passing judgment on the exercise of discretion will amount necessarily to passing judgment on the conduct of a coordinate branch of government; [3] the extent to which the imposition of liability would impair the free exercise of discretion by the officer; [4] the extent to which the ultimate financial responsibility will fall on the officer; *Page 73 
 [5] the likelihood that harm will result to members of the public if the action is taken; [6] the nature and seriousness of the type of harm that may be produced; and [7] the availability to the injured party of other remedies and other forms of relief."
Barnes, 530 So.2d at 784 (citing Restatement, § 895D, comment f). See Phillips v. Thomas, supra, at 84.
In Smith v. Arnold, supra, citing Barnes, supra, we recognized that the mental health profession, by its very nature, necessarily involves discretion and difficult decision-making. The Thomasville Center had a comprehensive set of institutional policies, which set out in detail the steps and procedures required whenever it became necessary to place a patient in seclusion. The record reveals that these institutional policies and procedures were followed and were carried out to the letter by these defendants. However, it does not follow from the fact that there were institutional policies in place and that the defendants complied with them, that the defendants were not also involved in discretionary functions.
Von Gibson was required to make a subjective assessment of the situation and to determine whether Derryl could be calmed down or whether seclusion might be necessary. From the record, it appears that Gibson attempted, without success, to get Derryl calmed down by talking to him and that he finally resorted to ordering the aides on duty to escort Derryl to a seclusion room. Clearly Gibson was performing a discretionary function. It was within Gibson's discretion not to seclude Derryl at that time but to simply require him to sit in the dayroom until he calmed down. Having concluded that seclusion was called for, Gibson followed established procedures. Institution procedures required that Gibson "carefully select" the clothing that Derryl was to be allowed to wear in the seclusion room — another discretionary function. Gibson notified nursing personnel of the necessity for Derryl's seclusion, and Mary McGee came over to examine him. Von Gibson likewise followed institutional procedures by notifying the POC, who in this instance was Ginger Glenn. After observing and examining Derryl, Ginger Glenn concurred with Gibson's assessment that seclusion was necessary and she took the next step, which was to notify Kent King, the QMHP on call.
The trial court carefully examined the particular functions performed by the defendants King, Young, Campbell, and Gibson and concluded that the critical functions performed by them in regard to their treatment of Derryl and/or their involvement with him, were discretionary functions and that they are entitled to the defense of substantive immunity from the plaintiff's tort claim. We agree.
Even if that defense was not available, we note that there is no evidence in the record that these defendants either should have or could have foreseen that Derryl Smith would take his own life. In Popham v. City of Talladega, 582 So.2d 541, 543
(Ala. 1991), we said, "The controlling factor in determining whether there may be a recovery for a failure to prevent a suicide is whether the defendants reasonably should have anticipated that the deceased would attempt to harm himself." The trial court correctly concluded, based on all the pleadings and evidence, that, at the time and place it occurred, Derryl Smith's suicide was not reasonably foreseeable by these defendants.
Because these defendants were entitled to the defense of substantive, or qualified, immunity from civil liability, and because the plaintiff presented no evidence that these defendants could reasonably have foreseen Derryl's suicide, the summary judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, HOUSTON and KENNEDY, JJ., concur.
[1] See Smith v. Arnold, 564 So.2d 873 (Ala. 1990), wherein we affirmed the summary judgment for Dr. Arnold. *Page 74