The City of Crossville appeals from a judgment entered by the DeKalb Circuit Court awarding Donna Haynes, as the administratrix of the estate of the Phillip Corley, deceased, $100,000 on her claim alleging that as a result of the City of Crossville's failure to train its employees in proper intake and monitoring procedures Phillip Corley committed suicide while he was an inmate in the Crossville city jail. We reverse and remand.
 Facts
In late 2001, the City of Crossville issued a warrant for the arrest of Phillip Corley based on his alleged issuance of a worthless check. Corley was arrested by the Cherokee County Sheriff's Department on January 23, 2002. In processing the arrest, the Cherokee County Sheriff's Department completed a "Cherokee County Detention Center Booking Sheet." In response to the questions on this booking sheet, Corley revealed to the officers of the sheriff's department that he had been treated for drug addiction and for mental illness. Corley also revealed to the officers that he had been in "rehab 2 months ago."[1]
Immediately below this information *Page 946 
was the question: "Does officer feel arrestee is suicidal?" The arresting officer checked the box that indicated that he did not feel Corley was suicidal.
A City of Crossville police officer, Officer Chris West, picked Corley up from the Cherokee County Sheriff's Department later that same day. The City of Crossville had no policy or procedure in place requiring officers to ask prisoners or arrestees questions regarding their medical and mental-health background, and Officer West did not obtain a copy of the booking sheet prepared by the Cherokee County Sheriff's Department. Neither Officer West nor anyone else employed with the City of Crossville questioned Corley about his medical or mental-health background before placing him in the Crossville city jail. Therefore, neither Officer West nor anyone employed by the City of Crossville learned that Corley had been treated for drug addiction or for mental illness; neither Officer West nor anyone else employed by the City of Crossville learned that Corley had been in rehabilitation two months before his arrest. Corley did not volunteer this information.
Once he was returned to Crossville, Corley was placed in a cell. Before he was placed in a cell, Corley was allowed to telephone his mother, Donna Haynes, to notify her that he was in the Crossville city jail. While in the cell, Corley was observed regularly by Kristie Towns and Peggy McLendon, police dispatchers for the City of Crossville. When Corley wanted to leave his cell to smoke, either officer Jacky Clayton or Chuck Priest, the acting chief of police for the City of Crossville, accompanied Corley outside. While Corley was incarcerated at the Crossville city jail, Donna Haynes and Misty Shankles, Corley's fiancée, visited Corley. He remained at the jail while his mother and Shankles attempted to arrange his bail.
On January 28, 2002, at approximately 5:45 p.m., during one of her routine checks, dispatcher McLendon discovered that Corley had committed suicide in his jail cell by hanging himself. McLendon had last checked on Corley at 4:30 p.m.[2]
Donna Haynes was appointed as the administratrix of Corley's estate. She sued the City of Crossville, Chief Priest, Officer Clayton, Officer West, and dispatchers Towns and McLendon. In her complaint, Haynes asserted a claim of wrongful death against all of the defendants; she also asserted a claim of negligence or wantonness against the individual defendants and against the City of Crossville, under a theory of respondeat superior, based on Chief Priest's alleged failure to train and supervise the employees of the police department and the jail in the proper intake, evaluation, and monitoring procedures for arrestees and prisoners. Haynes also purported to assert a negligence claim directly against the City of Crossville under § 11-47-190, Ala. Code 1975, for failing to remedy a defect and for failing to train its employees in the proper intake, evaluation, and monitoring procedures for arrestees and prisoners. *Page 947 
The defendants filed a motion for a summary judgment.[3]
Haynes opposed the motion for a summary judgment, arguing, as to the City of Crossville, that the City of Crossville failed to provide its employees with the training required to properly evaluate, monitor, or supervise its arrestees and prisoners and failed to provide its employees with the means to determine if the arrestees or prisoners presented a risk of harm to themselves. Haynes presented expert testimony by affidavit to the effect that the City of Crossville should have used a booking sheet or an intake sheet to enable the booking officers to determine the medical and mental-health background of persons being taken into custody, to determine whether those persons presented a risk of harm to themselves or to others, and to determine whether those persons suffered from mental illness or drug addiction. Haynes also presented evidence indicating that the dispatchers, Towns and McLendon, had not checked on Corley in accordance with the written policies and procedures of the Crossville city jail. Haynes also presented evidence indicating that a camera monitor installed at the Crossville city jail to allow the dispatcher to observe the prisoners while they were in their jail cells was not functioning on the day of Corley's suicide. Haynes argued that evidence that the camera monitor was not functioning was evidence of the City of Crossville's negligence or wantonness.
Haynes also opposed the defendants' claim in their summary-judgment motion that Haynes had not established that the defendants had a duty to prevent the suicide, i.e., that Corley had not manifested suicidal proclivities in the presence of the individual defendants. Haynes presented evidence indicating that while Corley was incarcerated at the Crossville city jail, he requested on at least three occasions that the dispatcher/jailer contact his mother to obtain his medication. Although Haynes admitted that the dispatchers did contact Haynes to inform her that her son was requesting his medication, Haynes asserted that no one employed with the City of Crossville ever followed up with Corley to determine that the medication he was requesting was an antidepressant. Haynes also presented evidence indicating that Corley had soiled his pants while he was incarcerated at the jail and required a change of clothes, which, she asserted, should have alerted the defendants that Corley had a mental-health problem. Haynes also presented evidence indicating that, when Officer Clayton took Corley outside to smoke a cigarette, Corley revealed during their conversation that he had recently suffered a nervous breakdown and that a tornado had recently destroyed his business; Haynes asserts that these statements also should have alerted the employees of the City of Crossville Police Department that Corley had a mental-health problem. Haynes presented testimony from Shankles indicating that on one occasion when she visited Corley at the jail Corley was pacing and he appeared agitated.
Haynes argued that this evidence sufficiently established that Corley manifested suicidal proclivities in the presence of the individual defendants and that they should have reasonably foreseen that Corley would attempt to harm himself. Further, Haynes argued that if it was not foreseeable to the individual defendants that Corley *Page 948 
would attempt to harm himself, this lack of foreseeability was a result of the defendants' negligence or wantonness in failing to have in place a training program, failing to have an intake system in place for incoming arrestees and prisoners, and failing to have a working camera monitoring system in place in the jail.
On January 28, 2004, the trial court entered summary judgments in favor of Chief Priest, Officer Chris West, and Officer Jacky Clayton. The trial court concluded that these defendants were protected by police-officer immunity under § 6-5-338(a), Ala. Code 1975, and/or State-agent immunity under Ex parte Cranman,792 So.2d 392 (Ala. 2000). The trial court stated that at the time of Corley's suicide Chief Priest, Officer West, and Officer Clayton were (1) police officers, (2) performing law-enforcement-related duties (3) that required the exercise of judgment, and (4) their conduct did not depart from any statute, rule, regulation, or procedure adopted by the City of Crossville, and (5) that Haynes had not presented any evidence to establish that Chief Priest, Officer West, or Officer Clayton had acted willfully, maliciously, fraudulently, or in bad faith.
However, the trial court denied the summary-judgment motion as to the dispatchers, McLendon and Towns. The trial court found that Towns and McLendon were not peace officers and that they, thus, were not entitled to the immunity granted under §6-5-338(a), Ala. Code 1975. Cf. Swan v. City of Hueytown,920 So.2d 1075 (Ala. 2005) (concluding, for purposes of that appeal and, on the basis that the appellant did not dispute the issue, that a police dispatcher was a "peace officer" as contemplated by § 6-5-338(a), Ala. Code 1975). Further, the trial court held that even if a police dispatcher could seek peace-officer immunity under § 6-5-338(a) Towns and McLendon would not be entitled to such immunity because substantial evidence had been presented indicating that McLendon and Towns had failed to comply with written policies and procedures for the Crossville city jail, which required dispatchers to visually check on the prisoners in their cells at least once every hour. The trial court held that under Howard v. City of Atmore, 887 So.2d 201 (Ala. 2003) (holding that when a State agent fails to discharge duties that are set pursuant to detailed rules or regulations, State-agent immunity does not apply), McLendon and Towns were not entitled to State-agent immunity. The trial court also held that as to the claims asserted against the City of Crossville under a theory of respondeat superior, the City of Crossville was entitled to immunity based on the claims asserted against Chief Priest, Officer West, and Officer Clayton but was not entitled to immunity based on the claims asserted against McLendon and Towns.
The trial court also addressed the claim asserted by Haynes directly against the City of Crossville under § 11-47-190, Ala. Code 1975, alleging neglect, carelessness, or unskillfulness, or the failure to remedy some defect after the defect has been called to the city's attention or after the defect had existed for such unreasonable length of time as to raise a presumption of knowledge of the defect. The trial court addressed Haynes's claim that the failure of the camera monitor contributed to Corley's death. The trial court held that Haynes had failed to present substantial evidence to support this direct claim against the City of Crossville, and it entered a summary judgment on that claim for the City of Crossville.
Finally, the trial court addressed the foreseeability of Corley's suicide. Relying on Popham v. City of Talladega,582 So.2d 541 (Ala. 1991), the trial court held that *Page 949 
sufficient evidence had been presented to create a genuine issue of material fact on the issue whether Corley manifested suicidal proclivities in the presence of one or more of the individual defendants. Therefore, the trial court held that the issue whether the individual defendants, and vicariously the City of Crossville, should have foreseen an excessive risk of self-inflicted harm by Corley was a question of fact for the jury.
Haynes subsequently moved the trial court to vacate part of its summary judgment. Haynes argued that the City of Crossville was liable for negligently or wantonly failing to train the officers and employees of the police department in how to supervise, evaluate, and monitor its arrestees and prisoners and that the claim could proceed directly against the City of Crossville under § 11-47-190, Ala. Code 1975, even though Chief Priest was protected by immunity under § 6-5-338(a), Ala. Code 1975. The trial court, relying on Couch v. City of Sheffield,708 So.2d 144 (Ala. 1998), agreed and, on June 1, 2004, vacated its summary judgment as to the "direct" claim against the City of Crossville. The trial court allowed Haynes to proceed with her claim that the City of Crossville was liable for the neglect, carelessness, or unskillfulness of some agent, officer, or employee.
In August 2004, Haynes's claims against Towns, McLendon, and the City of Crossville went to trial. At the conclusion of the evidence, the City of Crossville, Towns, and McLendon moved for a judgment as a matter of law. The defendants argued that Haynes failed to establish as to any of the remaining defendants a duty, a breach, and causation. Additionally, the defendants argued that Chief Priest was responsible for making administrative decisions for the police department, including training the employees of the department in supervising, evaluating, and monitoring arrestees and prisoners. The City of Crossville argued that because Chief Priest was shielded by police-officer immunity for his decisions in that regard, the City of Crossville was also immune from liability for those decisions. The trial court denied the motion and submitted the claims to the jury.
The jury returned a verdict in favor of Towns and McLendon, finding that they had not acted negligently or wantonly. However, the jury returned a verdict against the City of Crossville on Haynes's claim of failure to train.[4] The jury awarded damages in the amount of $550,000.
The City of Crossville filed a motion to remit the jury verdict to $100,000, pursuant to § 11-93-2, Ala. Code 1975. The City of Crossville also renewed its motion for a judgment as a matter of law, and, in the alternative, moved to alter, amend, or vacate the judgment or for a new trial. On September 13, 2004, the trial court entered an order remitting the judgment from $550,000 to $100,000, pursuant to § 11-93-2, Ala. Code 1975.
The City of Crossville appeals, raising the following issues:
 "1. Whether the trial court erred in allowing the negligent training claim to go forward against the City, where plaintiff failed to show sufficiently that the deceased had manifested suicidal proclivities in the presence of any of the [individual] defendants, and thus failed to sufficiently show that [Corley's] suicide was foreseeable under Alabama law.
 "2. Whether the trial court erred in denying the City the immunity provided under Alabama Code § 6-5-338(b). *Page 950 
 "3. Whether the trial court erred in denying defendant's Rule 59[, Ala. R. Civ. P.,] motion where the jury found that the jailers/dispatchers had used reasonable care toward [Corley], thus eliminating the causation between any negligence on the part of the City and the death of the decedent.
 "4. Whether the trial court erred to reversal in allowing [Haynes] to ask an officer about any training received after the death of the decedent, where the answer (none) was irrelevant and highly prejudicial, and where the answer should have been excluded as analogous to a subsequent remedial measure."
 Analysis
The City of Crossville first asserts that the negligent-training claim asserted against it should not have been submitted to the jury. In Waddell Reed, Inc. v. UnitedInvestors Life Insurance Co., 875 So.2d 1143 (Ala. 2003), this Court stated the standard of review applicable to a trial court's ruling on a motion for a judgment as a matter of law ("JML"):
 "When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a JML. Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution. The nonmovant must have presented substantial evidence in order to withstand a motion for a JML. A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling."
875 So.2d at 1152 (citations omitted).
The City of Crossville asserts that the requirements ofPopham, supra, and its progeny, addressing suicides of inmates, were not met in this case. More specifically, the City of Crossville argues that it could not have foreseen Corley's suicide because (1) he had no history of suicidal proclivities, (2) he did not manifest suicidal proclivities in the presence of the defendants, and (3) he was not admitted to the facility because of a suicide attempt. The City of Crossville, relying onPopham, supra; Smith v. King, 615 So.2d 69 (Ala. 1993);Tittle v. Giattina Fisher Co., Architects, 597 So.2d 679
(Ala. 1992); and Williams v. Lee County, 78 F.3d 491 (11th Cir. 1996), argues that the evidence presented in this case was not sufficient to give rise to a fact question on the issue of foreseeability.
 "We have held that proof of the existence of a duty owing from the defendant to the injured party is a prerequisite for proving negligence or wantonness, Alabama Power Co. v. Laney, 428 So.2d 21 (Ala. 1983), and that the question of whether a legal duty exists is essentially a question of law for the court, Rose v. Miller Co., Inc., 432 So.2d 1237
(Ala. 1983), to be resolved by determining whether the injury was foreseeable."
Keebler v. Winfield Carraway Hosp., 531 So.2d 841, 844 (Ala. 1988).
As this Court recognized in Keebler, supra, unless the resulting injury was reasonably foreseeable, no legal duty to prevent that injury exists and no liability results from failing to prevent the injury. *Page 951 
Additionally, in Popham, 582 So.2d at 543, this Court stated:
 "The controlling factor in determining whether there may be a recovery for a failure to prevent a suicide is whether the defendants reasonably should have anticipated that the deceased would attempt to harm himself. Annot., 11 A.L.R.2d 751, 782-92 (1950). In Keebler v. Winfield Carraway Hospital, 531 So.2d 841 (Ala. 1988), this Court held `that foreseeability of a decedent's suicide is legally sufficient only if the deceased had a history of suicidal proclivities, or manifested suicidal proclivities in the presence of the defendant, or was admitted to the facility of the defendant because of a suicide attempt.'"
This test of foreseeability remains the law applicable today in determining whether a duty to prevent a suicide exists. We must conclude that the evidence presented in this case does not rise to the level necessary to establish that the defendants could have or should have reasonably foreseen that Corley presented a threat to himself.
For example, in Popham, supra, Popham was arrested for public intoxication. He violently resisted arrest, fought with the police officers, spat at them, and screamed at them to come back and fight him. Once the officers successfully placed Popham in the jail cell, he began to cry or whimper. As part of the intake procedures, the officers removed Popham's belt, his shoes and shoelaces, and the contents of his pockets. The jailer observed Popham on the jail-cell monitor for a while, but when he was no longer visible on the monitor, the jailer assumed he was sleeping off his intoxication on the cot in the cell, which was not within the range of the monitor. The next morning the jailer discovered Popham had hanged himself beside the shower stall. This area was outside the range of the monitor.
Evidence was introduced indicating that Popham had been suicidal before his arrest. He had attempted suicide one week before his arrest. His family members were aware of these facts. However, neither Popham nor Popham's wife, who had visited the jail on the night of Popham's arrest, informed the officers of this fact. Popham never mentioned suicide to the officers during his arrest or threatened to commit suicide. None of the officers or employees of the City of Talladega had knowledge of Popham's previous suicide attempt or of his suicidal tendencies.
The Popham Court held that this evidence was insufficient to establish that Popham had manifested suicidal proclivities in the presence of the defendants. Because the plaintiff had failed to establish that the deceased (1) had a history of suicidal proclivities (known to the defendant), or (2) had manifested suicidal proclivities in the presence of the defendant, or (3) had been admitted to the facility of the defendant because of a suicide attempt, the Popham Court held that no fact issue had been presented on the question of foreseeability. If it is not foreseeable that a person will attempt suicide, a defendant has no duty to attempt to prevent the suicide. Therefore, thePopham Court affirmed the summary judgment in favor of the defendants.
In another suicide case, Smith v. King, 615 So.2d 69 (Ala. 1993), this Court concluded that the evidence presented did not establish that the defendants could have or should have foreseen that the decedent, Smith, would take his own life. Smith had been admitted to a State-owned mental-health facility. Smith had made previous oral threats to harm himself, but he had not actually attempted to do so. Smith had admitted that he had previously made such oral threats in an attempt to manipulate his parents and the staff at the mental-health *Page 952 
facility. Upon making those threats, Smith had been placed in seclusion for his own protection and to allow him to calm down.
On November 15, 1981, Smith became upset after speaking with his mother by telephone. He began making threats that he would harm himself, and, in accordance with the policies of the mental-health facility, he was placed in seclusion. Also in accordance with the policies of the facility, the staff at the facility made periodic checks on Smith. Shortly after Smith was placed in seclusion, the staff discovered that he had hanged himself.
Although the Court affirmed the summary judgment for the defendants on the basis of State-agent immunity, the Court also stated:
 "Even if that defense [of State-agent immunity] was not available, we note that there is no evidence in the record that these defendants either should have or could have foreseen that Derryl Smith would take his own life. . . . The trial court correctly concluded, based on all the pleadings and evidence, that, at the time and place it occurred, Derryl Smith's suicide was not reasonably foreseeable by these defendants."
Smith v. King, 615 So.2d at 73.
In Williams v. Lee County, 78 F.3d 491 (11th Cir. 1996), the United States Court of Appeals for the Eleventh Circuit held that the evidence presented was legally insufficient to establish that Williams, the decedent, had manifested suicidal proclivities in the presence of the defendants. Williams had admitted himself to East Alabama Medical Center ("EAMC") for detoxification and treatment for drug abuse; however, he left that facility without medical authorization. On March 8, 1989, the Lee County Sheriff's Department took Williams into custody on the order of the probate court; that court had ordered Williams committed to the State Department of Mental Health for treatment. Pending transfer to a State mental-health facility, Williams was being held at the Lee County jail.
The Lee County Sheriff's Department had information from the probate court commitment order that Williams was "mentally ill; . . . he poses a real and present threat of substantial harm to himself and to others." Williams, 78 F.3d at 492. The form also indicated that "Mr. Williams left the hospital without authorization and has homicidal intentions." Id.
Based on this information, the sheriff's office kept Williams under constant observation for two days in the booking area of the sheriff's office. At that time he was moved to a cell where he was checked every 15 to 20 minutes. On the afternoon of March 10, between 4:30 and 5:00, an officer checked on Williams in his cell. Williams said to the officer, "`I'm not going to make it. If I don't do it myself, somebody else will.'" Williams,78 F.3d at 492. The officer left the area of the cells, thought about the statement for several minutes, and concluded that Williams was presenting a threat to himself. When the officer returned to Williams's cell, he discovered Williams hanging by a sheet from a sprinkler head in the ceiling. Williams was pronounced dead at the scene.
Williams's father brought a wrongful-death action against Lee County and various individual defendants under Alabama law and a federal claim under 42 U.S.C. § 1983. The trial court entered a summary judgment for the defendants. In affirming the summary judgment on the state-law claim, the Eleventh Circuit Court of Appeals stated that "there was insufficient evidence offered to permit a jury to find that Williams'[s] suicide was foreseeable, *Page 953 
based on any notice to the sheriff's officers or any manifestation of suicidal tendencies in the presence of defendants." Williams, 78 F.3d at 493-94.
In Tittle v. Giattina, Fisher Co., Architects, supra, this Court again found that the plaintiff had presented insufficient evidence to establish a duty to prevent the decedent's suicide. In Tittle, the Court noted that the decedent, Tittle, had not been admitted to the Jefferson County jail because of a suicide attempt. He had expressly denied a history of emotional or mental problems. The officers stated that during the booking process, Tittle did not appear to be suicidal. The Court stated that it was undisputed that Tittle did not manifest suicidal proclivities in the presence of the defendants during his three-day stay at the Jefferson County jail. Based on that evidence, this Court affirmed the summary judgment in favor of the defendants.
Comparing the evidence presented in the instant case to that presented in Popham, Smith, Williams, and Tittle, supra, we agree with the City of Crossville that Haynes failed to present sufficient evidence to withstand the City of Crossville's motion for a judgment as a matter of law on the issue of the foreseeability of Corley's suicide. From the record, it is apparent that the City of Crossville knew only the following about Corley: (1) that he had been arrested on a worthless-check warrant; (2) that he had been picked up in Cherokee County and then transferred to DeKalb County; (3) that he had become irate on one occasion when he wanted to go outside to smoke and he later apologized for his behavior; (4) that he had mentioned to one of the officers that he had had a nervous breakdown and that a tornado had destroyed his business; (5) that he had soiled his pants when he first came to the Crossville city jail; (6) that he had asked on more than one occasion for some unidentified medication; and (7) that he had asked to speak with a Cherokee County drug-enforcement agent.
Corley's fiancée claimed to have observed Corley pacing, babbling, or tapping his head, but she did not report it to anyone employed with the City of Crossville. Haynes did not present any evidence to indicate that anyone employed with the City of Crossville ever observed such behavior in Corley. Additionally, Corley's family members knew that Corley had been treated for drug addiction and mental illness; however, that information was not provided to the City of Crossville. Further, Corley's fiancée knew that Corley was asking for an antidepressant although one had not been prescribed for him. However, again, that information was not conveyed to the City of Crossville. The employees of the Crossville city jail knew only that Corley was requesting some unidentified medication. Additionally, the Cherokee County Sheriff's Department was aware of Corley's treatment for drug addiction and mental-health problems by virtue of its booking sheet on Corley. However, no one employed with the City of Crossville obtained this information.[5]
Thus, the evidence in this case does not rise even to the level of that presented in Smith, supra, and Williams, supra, because, in those cases, the jailers or officials were aware of the decedents' mental illnesses. Further, Corley never made any actual or implied threat to harm himself, as did the decedents inSmith, supra, and Williams, supra. If the evidence proffered *Page 954 
in Smith and Williams did not establish foreseeability on the part of the defendants, the evidence presented in this case cannot, as a matter of law, establish the necessary foreseeability. Without foreseeability that the decedent would attempt suicide, there can be no recognized legal duty to prevent a suicide attempt and, thus, no right of recovery.
Next, Haynes argues that if the necessary foreseeability has not been established, it is only because the City of Crossville negligently or wantonly failed to train its employees to perform a booking or intake evaluation on arrestees and prisoners and negligently or wantonly failed to train its employees to properly supervise, evaluate, and monitor arrestees and prisoners. This assertion was also the basis of the claim asserted against the City of Crossville under § 11-47-190, Ala. Code 1975. However, this argument fails to support the submission of Haynes's claims to the jury for two reasons.
First, Chief Priest was charged with the responsibility of establishing the policies and procedures of the police department and the Crossville city jail, including the manner in which the employees of the police department were trained to supervise, evaluate, and monitor arrestees and prisoners. The establishment of such policies and procedures is within the exercise of the chief of police's judgment in the administration of the department. Acts or omissions dealing with the establishment of such policies or procedures fall within the State-agent-immunity protections discussed in Ex parte Cranman, 792 So.2d 392 (Ala. 2000). See Howard v. City of Atmore, 887 So.2d 201, 210 (Ala. 2003). The trial court recognized that Chief Priest was protected by immunity and entered a summary judgment in his favor.
However, as recognized in Howard, if a state actor is immune from liability for a particular act or omission, the state or municipality is also immune from liability for the same act or omission. In Howard, this Court addressed a situation almost identical to the one presented here. Howard's sister committed suicide while she was an inmate in the Atmore city jail. Howard sued, among others, the Atmore chief of police, Chief McKinley, asserting that the police chief had negligently failed to train his staff and had negligently failed to implement proper intake and monitoring procedures that would have allowed the jailers and officers to detect her sister's suicidal nature. Howard asserted that Chief McKinley and, thus, the City of Atmore, were liable for the wrongful death of her sister. The trial court entered a summary judgment in favor of Chief McKinley and the City of Atmore. Howard appealed.
The Court held that Chief McKinley was entitled to State-agent immunity under Ex parte Cranman, 792 So.2d 392 (Ala. 2000), and peace-officer immunity under § 6-5-338, Ala. Code 1975. TheHoward Court stated:
 "Howard directs us to no statute, rule, or regulation binding on Chief McKinley that purports to direct him in a particular manner as to the `administration of [his] department,' or to the training and supervision of its personnel. She merely contends that Chief McKinley's department has failed `to implement modern penalogical practices such as intake screening forms or processes, removal of potentially lethal means of suicide such as shoe strings and belts (even after recommendations by the [Alabama Bureau of Investigation]),' and, in this respect, has `lagged behind evolving standards of detention and incarceration.' . . . These allegations are based, however, on statistics regarding annual suicide rates from general publications, *Page 955 
such as, National Institute of Corrections, U.S. Dep't of Justice, Prison Suicide: An Overview and Guide to Prevention (1995).
 "Thus, there is a conspicuous absence of binding authority as to how to identify and handle a potential suicide risk and what precautions to take in any particular case. In the final analysis, the responsibility falls upon Chief McKinley to formulate suicide-prevention rules for his department, based on a myriad of factors, including the availability of resources and personnel. Category (2) of the Cranman formula expressly contemplates this scenario."
887 So.2d at 210. Thus, the Court in Howard held that the police chief was protected by State-agent immunity for his failure to implement intake and monitoring procedures that might have detected Howard's sister's suicidal tendencies.[6]
Further, in addressing the claim asserted against the City of Atmore, the Howard Court stated:
 "Howard contends that the City is `vicariously liable for the neglect, carelessness and unskillfulness' of Chief McKinley and Officer Bryars. It is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune. Section 6-5-338(b) provides: `This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers.' (Emphasis added.) See Ex parte City of Gadsden, 781 So.2d 936, 940 (Ala. 2000). On the other hand, if the statute does not shield the officer, it does not shield the city. Borders v. City of Huntsville, 875 So.2d 1168, 1183
(Ala. 2003).
 "In this case, § 6-5-338 shields the City from liability for the alleged `neglect, carelessness and unskillfulness' of Chief McKinley. Thus, the trial court correctly entered a summary judgment for the City with respect to the claims against Chief McKinley. However, the statute does not shield the City from liability for the alleged `neglect, carelessness and unskillfulness' of Officer Bryars, based on evidence indicating that he failed to comply with paragraph 7 of the order. Insofar as the summary judgment for the City was entered with respect to those claims, the trial court erred."
Howard, 887 So.2d at 211.
It is significant to note that the plaintiff in Howard
alleged that the City of Atmore was liable for Chief McKinley's "neglect, carelessness or unskillfulness." This is the pivotal language from § 11-47-190, Ala. Code 1975, the statute under which Haynes premised her "direct" claim against the City of Crossville. However, as stated in Howard, "if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to §6-5-338(b), the city by which he is employed is also immune."887 So.2d at 211. It cannot be disputed that the Howard Court was applying the immunity granted a municipality under § 6-5-338(b) to an action asserted under § 11-47-190, Ala. Code 1975, against the city based upon the acts or omissions of its police chief.
Based on Howard, we conclude that the City of Crossville is immune from any liability arising out of the decisions made *Page 956 
by the police chief for the City of Crossville regarding the intake, evaluation, and monitoring procedures of the Crossville Police Department at issue in this case. Because the police chief is immune from liability for those acts or omissions, the City of Crossville is also immune from liability for those acts or omissions. Because Chief Priest is the person charged with the administrative duty of implementing training programs and procedures for the police department and jail employees of the City of Crossville, there is no other agent, officer, or employee of the City of Crossville on whom liability for that failure to train can be predicated. Therefore, Haynes was not entitled to assert a "direct" claim against the City of Crossville under §11-47-190, Ala. Code 1975. The trial court improperly reversed itself on the claim asserted "directly" against the City of Crossville.
Finally, we acknowledge that the claims Haynes asserted against the dispatchers individually were allowed to stand and to proceed to trial because, the trial court concluded, Towns and McLendon were not protected by peace-officer immunity and the evidence indicated that they had failed to follow a detailed regulation. However, based on our resolution of the issue of foreseeability, a judgment as a matter of law should have been entered for Towns and McLendon on those claims before the trial. Therefore, the trial court erred in submitting those claims to the jury. However, even if those claims had been properly submitted to the jury, the jury found in favor of the dispatchers. Thus, at the conclusion of the trial, the only verdict was against the City of Crossville on the claim that Crossville was vicariously liable for the "neglect, carelessness or unskillfulness or some agent, officer or employee" pursuant to § 11-47-190, Ala. Code 1975. However, because the jury found that no agent, officer, or employee of the City of Crossville had acted neglectfully, carelessly, or unskillfully, the element of causation is lacking. The verdict against the City of Crossville cannot stand.
We reverse the judgment against the City of Crossville and remand the cause to the trial court for entry of a judgment as a matter of law in favor of the City of Crossville.
REVERSED AND REMANDED WITH DIRECTIONS.
NABERS, C.J., and SEE, HARWOOD, and BOLIN, JJ., concur.
[1] Out to the side of this notation, the words "Mountain View" were written. Mountain View is apparently a rehabilitation facility. It is unclear from the record whether the facility treats drug addiction, mental illness, or both.
[2] Based on the 4:30 p.m. observation time, McLendon should have checked on Corley no later than 5:30 p.m. on January 28. However, McLendon testified that at 5:31 p.m. she received a radio call from Officer Jacky Clayton, indicating that he was leaving his police car on a call. She further testified that she was supposed to stay by the radio whenever an officer was "out of his car" on a call until the officer checked back in with her. Therefore, she stated, she could not perform the 5:30 p.m. check on Corley, but as soon as Officer Clayton checked in, McLendon checked on Corley.
[3] Although the record contains a narrative statement of the facts, it does not contain a brief in support of this motion. However, the trial court indicated in its order that the motion was the subject of a hearing and that briefs and evidentiary materials were submitted in support of the motion.
[4] Haynes has not appealed from the judgments entered in favor of Towns and McLendon. Therefore, those judgments are not before this Court.
[5] We acknowledge Haynes's assertion that Chief Priest and the City of Crossville acted negligently in not obtaining this information from Corley. We address that assertion later in this opinion.
[6] The expert testimony offered by Haynes in this case is similar to that offered in Howard. Additionally, although we need not do so to resolve this case, we would decline to adopt the opinion of Haynes's expert that caring for an arrestee or prisoner requires the same level of care provided to "a new child."