Rel: August 30, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2024

_____

### SC-2023-0873

_____

## Ex parte City of Anniston, Daniel Price, and Dustin Handling

## PETITION FOR WRIT OF MANDAMUS

## (In re: Kimberly D. Ervin, as the personal representative of the Estate of Candi Jean Ward, deceased

## v.

## City of Anniston, Daniel Price, and Dustin Handling)

## (Calhoun Circuit Court: CV-16-900205)

STEWART, Justice.

PETITION DENIED.  NO OPINION.

Parker, C.J., and Shaw, Bryan, and Mitchell, JJ., concur.

Sellers, J., dissents, with opinion, which Mendheim, J., joins.

Wise and Cook, JJ., recuse themselves.

SELLERS, Justice (dissenting).

I respectfully dissent from the Court's decision to deny the petition for a writ of mandamus in this matter. In my view, the petitioners have demonstrated that the trial court erred in concluding that there is sufficient evidence indicating that the police-officer defendants in this case acted willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law such that they were precluded from relying on peace-officer immunity.

In September 2015, several drivers passing through Anniston on Highway 202 called 911 emergency services and reported that they had seen a person in dark clothing, later identified as Candi Jean Ward, lying on the shoulder of the highway. Police officers Daniel Price and Dustin Handling, who were employed by the City of Anniston ("the City"), as well as emergency-medical-services ("EMS") workers, arrived at Ward's location. The EMS workers informed the officers that they had found on the ground nearby a bottle of pills, later identified as Diazepam, and that they also believed that Ward was intoxicated. Ward admitted to the officers that she had been drinking and that she had taken one of the

pills, although a toxicology report later showed that Ward had little alcohol and Diazepam in her system.

The EMS workers also informed the officers that Ward was suffering from road rash and that Ward had told them that she "fell out of the truck" that was being driven by her "live-in partner," Shaneyfelt Troy Robinson. Ward suggested to the officers that Robinson had been "hitting" Ward at the time. It appears that the officers had previously responded to a disturbance involving Ward and Robinson at a local business approximately 15 minutes earlier.

When the officers asked Ward if she wanted medical treatment, she refused treatment. Instead, she told the officers that her nearest relative was her aunt, who lived in Talladega, and that her aunt could come and pick her up. Ward, however, did not have a telephone and did not know her aunt's phone number. Ward explained to the officers that she did, however, know Robinson's phone number, that Robinson knew her aunt's phone number, and that the officers could call Robinson to retrieve her aunt's phone number. Instead, the officers recommended that Ward walk to Dee Ford's, a nearby bar, to find someone that she knew or to use the bar's phone to call Robinson and, in turn, her aunt. Price testified that

4

he also suggested to Ward that he could call her a cab, but it is disputed as to whether that conversation occurred. Price and Handling made no attempt to call Robinson or to have their police dispatcher call Robinson.

Handling told Ward that he could arrest her for possession of a controlled substance or for public intoxication but that he did not want to do so because he had "something he need[ed] to do first thing in the morning." He also told her that he did not want to have to spend the night at the hospital with Ward if she was arrested for public intoxication. After additional attempts to persuade Ward to walk to Dee Ford's failed, the officers allowed Ward to leave the scene and walk toward Talladega along Highway 202. They warned Ward to stay to the right of the asphalt, and they told her that, if they caught her on the asphalt, they would take her to jail. Shortly thereafter, 911 emergency services received a call from a driver on Highway 202 reporting that he had fatally struck a woman who was in the middle of the road wearing dark clothes and who was later identified as Ward. Following an internal investigation of the incident by the Anniston Police Department, the officers resigned their employment.

Kimberly D. Ervin, as the personal representative of Ward's estate, sued the City and the officers in the Calhoun Circuit Court, asserting that the officers had acted negligently, wantonly, maliciously, or in bad faith and had caused Ward's death. The City and the officers moved for a summary judgment, asserting peace-officer immunity pursuant to § 6-5-338, Ala. Code 1975. The trial court denied that motion, and this petition followed.

In deciding whether a police officer is entitled to immunity under § 6-5-338, courts consider the factors set out in Ex parte Cranman, 792 So. 2d 392 (Ala. 2000) (plurality opinion), as modified in Hollis v. City of Brighton, 950 So. 2d 300 (Ala. 2006). The officers in this case are entitled to immunity if the basis of their alleged liability consists of actions they took in exercising judgment in the enforcement of the criminal laws of the State. Id. It is undisputed that the officers were enforcing those laws when they took the actions that allegedly led to Ward's death. There are, however, some exceptions to peace-officer immunity that Ward claims apply here. Specifically, she asserts that the officers acted willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under

a mistaken interpretation of the law. See Cranman, 792 So. 2d at 405; Hollis, 950 So. 2d at 307.

In specifically asserting that the officers acted beyond their authority, Ervin claims that they breached duties set out in detailed "rules or regulations" such as those embodied by a "checklist." See Giambrone v. Douglas, 874 So. 2d 1046, 1053 (Ala. 2003). However, for a particular rule or regulation to serve as the basis for an exception to State-agent or peace-officer immunity, it must be so specific that it removes any discretion that a State agent or peace officer otherwise would have and puts the agent or officer on notice that certain behavior is prohibited. Odom v. Helms, 314 So. 3d 220, 229 (Ala. 2020). The administrative order upon which Ervin relies in the present case provides broadly that Anniston police officers should "provide a safety net" for "victims" of domestic violence. Examples of safety nets recognized in the administrative order include "mak[ing] telephone calls or physical contacts with persons" who can provide support to victims and providing victims with "information" regarding people who can assist them. The administrative order does not expressly direct officers to contact any

specific persons, and it is noteworthy here that 911 emergency-services personnel contacted EMS workers to assist Ward.

I agree with the officers' and the City's position that the administrative order "is a general, broad policy 'instituted to ensure that all personnel consider the fact that victims feel hopeless, vulnerable, frightened and traumatized ….'" Petition at 15. There are a myriad of potential situations involving victims of domestic violence that police officers might be confronted with, and I do not consider a broad policy regarding the provision of a "safety net" by, for example, contacting unnamed persons who might assist a victim to be the sort of detailed checklist that would remove the discretion that an officer must have in dealing with each particular situation based on its own unique circumstances. I also agree with the police officers and the City that the initial determination of whether Ward was a "victim" in the first place also required some degree of discretion on the officers' part. Cf. Howard v. City of Atmore, 887 So. 2d 201, 207 (Ala. 2003) (concluding that a police officer acting as a jailer had discretion to determine whether an inmate was intoxicated, was an addict, or was a suicide risk with respect to complying with a policy requiring regular frequent checks of such

8

inmates); Walker v. City of Huntsville, 62 So. 3d 474, 498 (Ala. 2010) (holding that police officers had discretion to determine whether a prisoner was injured before or during an arrest with respect to complying with a policy requiring the officers to take injured prisoners for medical attention). A police officer's alleged negligence or wantonness is not enough to establish that the officer violated a detailed mandatory directive that removed the officer's discretion while engaging in police activity. See Ex parte City of Montgomery, 272 So. 3d 155, 168 (Ala. 2018) ("[N]egligent or wanton conduct will not support the conclusion that a police officer has acted beyond his or her authority when he or she is exercising discretion in the discharge of his or her law-enforcement duties.").

I also do not believe that there is substantial evidence indicating that the police officers acted willfully, maliciously, fraudulently, in bad faith, or under a mistaken interpretation of the law. Again, negligence or wantonness is not enough. Ex parte City of Montgomery, 272 So. 3d at 168. The evidence does not indicate that the officers intended to injure Ward or that they otherwise acted with ill intent or bad faith. To the contrary, although the officers arguably acted negligently, the evidence

9

establishes that the officers tried to <u>help</u> Ward, not harm her. That they were unsuccessful does not subject them to liability.

Because, in my view, there is not substantial evidence showing the existence of an exception to peace-officer immunity, I would grant the petition and issue a writ of mandamus directing the trial court to dismiss Ervin's claims against the police officers and Ervin's claims against the City grounded on those officers' actions. <u>See</u> <u>City of Crossville v. Haynes</u>, 925 So. 2d 944, 954-55 (Ala. 2005) (indicating that, if a police officer is entitled to immunity, then so is the city employing the officer).

Mendheim, J., concurs.